2014 COA 101

**PIONEER NATURAL RESOURCES USA, INC., Plaintiff–Appellee,**

**v.**

**COLORADO DEPARTMENT OF REVENUE, Defendant–Appellant.**

**Court of Appeals No. 12CA1703**

Colorado Court of Appeals, Div. I.

Announced August 14, 2014

Beatty & Wozniak, P.C., Karen L. Spaulding, Denver, Colorado, for Plaintiff–Appellee

John W. Suthers, Attorney General, Robert H. Dodd, Jr., Senior Assistant Attorney General, Alexander C. Reinhardt, Assistant Solicitor General, Denver, Colorado, for Defendant–Appellant

Opinion by JUDGE FURMAN

¶ 1 In this sales tax case, defendant, the Colorado Department of Revenue (DOR), appeals the district court's summary judgment in favor of plaintiff, Pioneer Natural Resources USA, Inc. (Pioneer). The DOR takes issue with the district court's conclusion that pipelines and fittings, which are located in one of Colorado's enterprise zones and are used to gather and deliver natural gas from Pioneer's wells to its processing facilities, qualify for Colorado's sales tax exemption because they "are in direct use in the manufacturing of natural gas" as defined in section 39–26–709, C.R.S.2013, and section 39–30–106, C.R.S.2013. Because we disagree with the DOR, we affirm the district court's summary judgment.

¶ 2 For the 2003 and 2004 tax years, the DOR determined that the pipelines and fittings were not exempt from state sales tax because they did not fall under the definition of "manufacturing" in sections 39–26–709 and 39–30–106. Pioneer appealed this determination to the Executive Director of the DOR. A DOR hearing officer also determined that the pipelines were not exempt for the same reason.

¶ 3 Pioneer then filed a complaint for judicial review of the DOR's determinations in the district court. The DOR and Pioneer filed competing motions for summary judgment. As noted, the district court granted summary judgment in favor of Pioneer.

¶ 4 Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." C.R.C.P. 56(c). We review a district court's grant of summary judgment de novo. See Amos v. Aspen Alps 123, LLC, 2012 CO 46, ¶ 13, 280 P.3d 1256.

## I. Pioneer's Pipelines and Fittings

¶ 5 The material facts are undisputed. Pioneer's Raton Basin gathering system pipelines and fittings, at issue in this appeal, are located in Colorado's South Central Enterprise Zone. Pioneer operates over 2000 wells and ten compressor sites in the Raton Basin. Pioneer uses the gathering system pipelines and fittings to maintain pressure, extract natural gas from each well, and move the gas to compressor/ processing stations for final processing before the gas enters an interstate pipeline for commercial distribution.

¶ 6 The natural gas gathering is sensitive to line pressure. At the wellhead, Pioneer actively manages the pressures on a daily basis with pressure transducers that are accurate to 0.1 pounds per square inch gauge (psig). Pioneer staff regularly conducts "pigging" operations to keep the gathering system pipelines clean and free of condensed water and other debris. Pioneer also extracts gas from each well with dewatering pumps. Wastewater is removed from the gas on site. The gas progresses through the pipelines to one of Pioneer's compressor stations where it goes through a dehydrator for final processing.

¶ 7 In granting summary judgment in favor of Pioneer, the district court found that Pioneer's "gas gathering system extracts natural gas from the earth, which then travels in pipes from the extraction site in a continuous flow to one of [its] ten processing plants." It then determined that Pioneer's pipe and fittings purchased for this gas gathering system qualify for the enterprise zone sales tax exemption as machinery used in manufacturing under sections 39–26–709 and 39–30–106.

¶ 8 The DOR contends that the district court erred in finding that Pioneer's purchases qualify for this tax exemption. To address the DOR's contention, we must determine whether the district court interpreted sections 39–26–709 and 39–30–106 correctly.

¶ 9 We review a district court's interpretation of statutes de novo. See McIntire v. Trammell Crow, Inc., 172 P.3d 977, 979 (Colo.App.2007). If the statute is "clear and unambiguous on its face," we construe the

statute according to its plain language and apply the statute as written. *Id.* In so doing, we "read and consider the statute as a whole and interpret it in a manner giving 'consistent, harmonious, and sensible effect to all its parts.'" *Kyle W. Larson Enters. v. Allstate Ins. Co.,* 2012 COA 160, ¶ 9, 305 P.3d 409 (quoting *Lujan v. Life Care Ctrs.,* 222 P.3d 970, 973 (Colo.App.2009)). And, because we agree with Pioneer that the statutes in question are not ambiguous, we decline the DOR's invitation to consider their legislative history. *See Kyle W. Larson,* ¶ 10; *McIntire,* 172 P.3d at 979.

¶ 10 But, we recognize that, "when construing a tax exemption statute, [we] should view exemption as the exception and taxation as the rule." *Ball Corp. v. Fisher,* 51 P.3d 1053, 1056 (Colo.App.2001). Thus, "[a]ny ambiguity in the language of the statute is to be construed against the taxpayer." *Broadmoor Hotel, Inc. v. Dep't of Revenue,* 773 P.2d 627, 629 (Colo.App.1989).

## II. The Tax Exemption Statutes

¶ 11 Under the statewide manufacturing sales and use tax exemption statute, purchases of "machinery or machine tools" in excess of $500 are exempt from sales tax if they are "used in Colorado directly and predominately in manufacturing tangible personal property, for sale or profit...." § 39–26–709(1)(a)(II).

¶ 12 The statewide exemption statute defines "machinery" as "any apparatus consisting of interrelated parts used to produce an article of tangible personal property" including "both the basic unit and any adjunct or attachment necessary for the basic unit to accomplish its intended function." § 39–26–709(1)(c)(II).

¶ 13 The statewide exemption statute also defines "manufacturing" as "the operation of producing a new product, article, substance, or commodity different from and having a distinctive name, character, or use from raw or prepared materials." § 39–26–709(1)(c)(III).

¶ 14 And, the statewide exemption statute clarifies that direct use in manufacturing begins

for items normally manufactured from inventoried raw material at the point at which raw material is moved from plant inventory on a contiguous plant site and to end at a point at which manufacturing has altered the raw material to its completed form, including packaging, if required. Machinery used during the manufacturing process to move material from one direct production step to another in a continuous flow and machinery used in testing during the manufacturing process is deemed to be directly used in manufacturing.

§ 39–26–709(1)(d).

¶ 15 The parties agree that Pioneer's wells and gas gathering system are located within an enterprise zone. Under the enterprise zone sales and use tax exemption statute, purchases of "machinery or machine tools" in excess of $500 are exempt from sales tax if they are "used solely and exclusively in an enterprise zone in manufacturing tangible personal property, for sale or profit...." § 39–30–106(1)(a). The enterprise zone exemption statute clarifies:

The provisions of section 39–26–709(1) shall govern the administration of this subsection (1), except to the extent that such section and this subsection (1) are inconsistent. For purposes of this section, in addition to the definition of "manufacturing" found in section 39–26–709(1)(c)(III), "manufacturing" shall include refining, blasting, exploring, mining and mined land reclamation, quarrying for, processing and beneficiation, or otherwise extracting from the earth or from waste or stockpiles or from pits or banks any natural resource.

§ 39–30–106(1)(b).

¶ 16 Based on these statutes, we agree with the district court and conclude that Pioneer's pipelines and fittings purchased for this gas gathering system qualify for the enterprise zone sales tax exemption as machinery used in manufacturing. The pipelines are used to "move material from one direct production step to another in a continuous flow." § 39–26–709(1)(d). And, the enterprise zone exemption statute considers both "extracting" and "processing" as manufacturing. § 39–30–106(1)(b). Thus, Pioneer's pipelines and fittings that move natural gas from the wells—a direct production step of extracting natural gas—to the pro-

cessing facilities in a continuous flow qualify for Colorado's sales tax exemption because they "are in direct use in the manufacturing of natural gas." §§ 39–26–709; 39–30–106.

¶ 17 Nevertheless, the DOR contends that "gathering," in reference to Pioneer's gas gathering system, is not extracting or processing and, thus, that pipelines used in gathering should not be considered as directly used in manufacturing. We disagree.

¶ 18 It is true that Colorado's tax statutes include a technical definition of "gathering" as "the movement of an unseparated, bulk production stream to a point, on or off the lease, where the production stream undergoes initial separation into identifiable oil, gas, or free water." § 39–29–102(7), C.R.S. 2013. And, this technical definition of gathering is different from the technical definitions of extracting and processing in the tax statutes. But, the fact that gathering is different from extracting and processing does not change the fact that the pipelines in Pioneer's gas gathering system move natural gas from one direct production step to another in a continuous flow. *See* § 39–26–709(1)(d); *see also Bertrand v. Bd. of Cnty. Comm'rs*, 872 P.2d 223, 228 (Colo.1994) (the meaning of a term in one statute does not necessarily apply in other statutes).

¶ 19 The DOR also contends that the "continuous flow" provision of the second sentence in section 39–26–709(1)(d) only applies to machinery used "during the manufacturing process" described in the first sentence of this section. Because the manufacture of natural gas does not fit the manufacturing process described in the first sentence of section 39–26–709(1)(d), the DOR contends the "continuous flow" provision should not apply to the manufacture of natural gas. Again, we disagree.

¶ 20 The "continuous flow" provision of the second sentence of section 39–26–709(1)(d) does not include language that limits its application to the manufacturing process described in the first sentence of this section. So, although the manufacture of natural gas under section 39–30–106 does not fit the manufacturing process described in the first sentence of section 39–26–709, natural gas does undergo a manufacturing process under section 39–30–106, which includes extracting and processing the natural gas. Thus, the "continuous flow" provision of the second sentence in section 39–2 6–709(1)(d) governs the manufacturing process for natural gas and covers the pipelines and fittings in Pioneer's gas gathering system.

### III. Conclusion

¶ 21 The judgment is affirmed.

CHIEF JUDGE LOEB and JUDGE TAUBMAN concur.