Colorado Court of Appeals Opinions || October 8, 2015


Colorado Court of Appeals -- October 8, 2015
2015 COA 146. No. 14CA2200. Roalstad v. City of Lafayette.



 Â 

 
 
 
 COLORADO COURT OF APPEALS

 
 2015 COA 146

 
 



 Court of Appeals No. 14CA2200
 Boulder County District Court No. 14CV31094
 Honorable Andrew Hartman, Judge


 Wendy Lasher Roalstad,

 Plaintiff-Appellant,

 v.

 City of Lafayette, Colorado,

 Defendant-Appellee.


 ORDER REVERSED AND CASE
 REMANDED WITH DIRECTIONS

 Division III
 Opinion by CHIEF JUDGE LOEB
 MÃ¡rquez* and Vogt*, JJ., concur

 Announced October 8, 2015


 Thomas Read Mattson, Boulder, Colorado, for Plaintiff-Appellant

 Kristin Nordeck Brown, P.C., Kristin Nordeck Brown, Longmont, Colorado, for Defendant-Appellee

 *Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, Â§ 5(3), and Â§ 24-51-1105, C.R.S. 2015.

 
 Â 

 Â¶1Â Â Â Â Â Â Â Â  This appeal concerns the right to a jury trial in a municipal court action. The origins of this matter began when the City of Lafayette (City) charged Wendy Lasher Roalstad with violating its municipal ordinance regarding vicious animals. Roalstad requested a jury trial pursuant to section 16-10-109, C.R.S. 2015. The municipal court denied the request. She appeals the district courtâs dismissal of her C.R.C.P. 106 and declaratory judgment action in which she challenged the municipal courtâs denial of her request for a jury trial. The sole issue on appeal is whether the offense for which Roalstad was charged under the Cityâs ordinances was a petty offense under section 16-10-109, which would entitle her to a jury trial under that statute. We conclude that, as a matter of law, Roalstad was entitled to a jury trial in municipal court pursuant to section 16-10-109. Accordingly, we reverse the district courtâs order of dismissal under C.R.C.P. 12(b)(5) and remand with directions.

 I.Â Â Â Â Â Â Â Â  Background and Procedural History

 Â¶2Â Â Â Â Â Â Â Â  Roalstad was charged with violating Lafayette Municipal Ordinance section 25-85, âVicious animals prohibited,â when her dog allegedly bit the wife of the Cityâs manager of finance. LafayetteÂ Rev. Mun. Code 25-85. The record shows that this was Roalstadâs first alleged offense under section 25-85.

 Â¶3Â Â Â Â Â Â Â Â  Through counsel, she entered a not guilty plea and requested a jury trial pursuant to section 16-10-109. It is undisputed that she correctly followed the statutory procedure to request a jury trial. The municipal court denied both her request for a jury trial and her subsequent motion for reconsideration.

 Â¶4Â Â Â Â Â Â Â Â  Roalstad then filed a complaint in Boulder County District Court for declaratory and injunctive relief pursuant to C.R.C.P. 106(a)(4), C.R.C.P. 57, and C.R.C.P. 65, in which she asserted that the municipal court erred as a matter of law in denying her a jury trial under section 16-10-109. She requested that the district court declare as void the municipal courtâs order denying her a jury trial, and issue an order declaring that she has a right to a jury trial in municipal court.

 Â¶5Â Â Â Â Â Â Â Â  The City filed a motion to dismiss under C.R.C.P. 12(b)(5), arguing that Roalstad had failed to state a claim upon which relief could be granted because the offense described in the ordinance under which she was charged is not a petty offense under section 16-10-109 and, further, that she has no Sixth Amendment right toÂ a jury trial. In support of its motion, the City argued that this exact issue had already been decided by another Boulder District Court judge in a 2013 district court case, Boyd v. Mun. Court of Lafayette, 2013 CV 30775 (Boulder Dist. Ct. May 30, 2013).

 Â¶6Â Â Â Â Â Â Â Â  The district court granted the Cityâs motion to dismiss, finding that the penalties relevant in this case âcomprise [sic] of a minimum fine of $500â and do not provide for imprisonment or restitution. The court then cited to Sixth Amendment case law regarding the right to a jury trial and the âseriousnessâ of an offense. The court also noted the decision in Boyd and concluded that, âfor these reasons and others stated in the motion to dismiss, [p]laintiff is not entitled to a jury trial, as [p]laintiffâs Sixth Amendment rights have not been implicated by the listed municipal charges under Byrd v. Stavely, 113 P.3d 1273 (Colo. App. 2005).â The court did not mention section 16-10-109 in its order.

 Â¶7Â Â Â Â Â Â Â Â  Roalstad filed a motion for reconsideration, arguing that the courtâs order did not address her arguments under section 16-10Â­109. The district court denied the motion because âRoalstad has not raised any new issues not already briefed and considered by the court.â

 Â¶8Â Â Â Â Â Â Â Â  This appeal followed.

 II. Standard of Review

 Â¶9Â Â Â Â Â Â Â Â  We review a district courtâs decision to grant a C.R.C.P. 12(b)(5) motion to dismiss de novo and apply the same standards as the district court. Denver Post Corp. v. Ritter, 255 P.3d 1083, 1088 (Colo. 2011). Accordingly, we accept all factual allegations in the complaint as true and view them in the light most favorable to Roalstad. Id.

 Â¶10Â Â Â Â Â Â Â Â  We also review a district courtâs interpretation of statutes de novo. Pioneer Natural Res. USA, Inc. v. Colo. Depât of Revenue, 2014 COA 101, Â¶9. As with any statute, our primary task is to give effect to the General Assemblyâs intent by first looking to the statuteâs plain language. Wiesner v. Huber, 228 P.3d 973, 974 (Colo. App. 2010); Francis ex rel. Goodridge v. Dahl, 107 P.3d 1171, 1176 (Colo. App. 2005). If the statutory language is clear and unambiguous on its face, we look no further and apply the words as written. Pioneer Natural Res., Â¶9. In so doing, we âread and consider the statute as a whole and interpret it in a manner giving âconsistent, harmonious, and sensible effect to all its parts.ââ Id.Â (quoting Kyle W. Larson Enters. v. Allstate Ins. Co., 2012 COA 160, Â¶9).

 Â¶11Â Â Â Â Â Â Â Â  Courts interpret local government ordinances as they would any other form of legislation. City of Colorado Springs v. Securcare Self Storage, Inc., 10 P.3d 1244, 1248 (Colo. 2000); Cherry Hills Resort Dev. Co. v. City of Cherry Hills Village, 790 P.2d 827, 830 (Colo. 1990); Walter G. Burkey Trust v. City & Cnty. of Denver, 2012 COA 20, Â¶8 (âThe same rules of construction apply in interpreting ordinances as in construing statutes.â).

 Â¶12Â Â Â Â Â Â Â Â  Lastly, C.R.C.P 106(a)(4) provides:

 Where any governmental body or officer or any lower judicial body exercising judicial or quasi-judicial functions has exceeded its jurisdiction or abused its discretion, and there is no plain, speedy and adequate remedy otherwise provided by law . . . (I) Review shall be limited to a determination of whether the body or officer has exceeded its jurisdiction or abused its discretion, based on the evidence in the record before the defendant body or officer.

 See Widder v. Durango Sch. Dist. No. 9-R, 85 P.3d 518, 524 n.9 (Colo. 2004).

 Â¶13Â Â Â Â Â Â Â Â  In determining the existence of an abuse of discretion under C.R.C.P. 106(a)(4), a reviewing court may consider whether the lower tribunal misconstrued or misapplied the applicable law. Bd. of Cnty. Commârs v. Conder, 927 P.2d 1339, 1343 (Colo. 1996); Van Sickle v. Boyes, 797 P.2d 1267, 1274 (Colo. 1990). We sit in the same position as the district court when reviewing an agency or court decision under C.R.C.P. 106(a)(4). Hellas Constr. Inc. v. Rio Blanco Cnty., 192 P.3d 501, 507 (Colo. App. 2008). We thus review the issues presented to the district court de novo. City of Colorado Springs v. Givan, 897 P.2d 753, 756 (Colo. 1995); Hellas, 192 P.3d at 507; Stamm v. City & Cnty. of Denver, 856 P.2d 54, 58 (Colo. App. 1993).

 III. The Charged Offense and Lafayetteâs Municipal Code

 Â¶14Â Â Â Â Â Â Â Â  Chapter 25 of the Lafayette Municipal Code (the Code) deals with â[a]nimals and [f]owl.â The definitions for this chapter are found in section 25-2. Article V of this chapter concerns â[v]icious [a]nimals.â

 Â¶15Â Â Â Â Â Â Â Â  Roalstad was charged with violating municipal ordinance 25Â­85, titled â[v]icious animals prohibited.â Specifically, that ordinanceÂ makes it âunlawful for any person to own a vicious animal.â Lafayette Rev. Mun. Code 25-85(a). Vicious animal is defined as any animal which[:]

 (1) Unprovokedly attacks or bites humans or other animals on public or private property; or

 (2) Without provocation approaches any person or animal on public or private property in a terrorizing manner or in an apparent attitude of attack; or

 (3) Has been engaged in or trained for animal fighting as described and prohibited by section 18-9-204, C.R.S., as amended.

 Id. at 25-2.

 Â¶16Â Â Â Â Â Â Â Â  Any person convicted of the vicious animal offense may, if applicable, keep such animal only upon compliance with âall terms and conditions set forth pursuant to section 25-89.â Id. at 25-85(a). Under section 25-89(a), a person convicted of owning a vicious animal is subject to myriad conditions and a mandatory fine. The conditions include spaying or neutering the animal, implanting a microchip in the animal, very specific requirements for confining the animal (including leash lengths, muzzle requirements, and structural requirements for any pen or cage built for the animal), procuring liability insurance, posting signs notifying the public thatÂ a vicious animal is on the premises, limitations on selling or transferring the animal, and notifying the police if the animal is at large, stolen, or again acted in a vicious manner. Id. at 25-89(a)(1)Â­(9). However, if it is a defendantâs first offense and the attack by the vicious animal resulted in something less than bodily injury, the owner is subject to only a select few of the conditions in subsection (a). Id. at 25-89(b).

 Â¶17Â Â Â Â Â Â Â Â  While the heavier punishment described in subsection (a) does not explicitly require that the vicious animal cause bodily injury, the fact that two different fines for first offenses are set out, one when the attack results in âless than bodily injury,â implies that the heavier punishment is instituted only when the vicious animal caused bodily injury. The fine schedules for violations of section 25-85 impose the following penalties: for a first offense resulting in less than bodily injury, a fine of at least $250; for a first offense resulting in bodily injury, a fine of at least $500; for an additional offense within twelve months of the initial violation, a fine of at least $750. Id. at 25-89(a)(10), (b)(5).

 Â¶18Â Â Â Â Â Â Â Â  Bodily injury is defined in section 25-2 as âany physical injury that results in severe bruising, muscle tears or skin lacerationsÂ requiring professional and medical treatment or any physical injury that requires corrective or cosmetic surgery.â Likewise, serious bodily injury means

 bodily injury which, at the time of the actual injury or a later time, involves a substantial risk of death, a substantial risk of serious permanent disfigurement, a substantial risk of protracted loss or impairment of the function of any part or organ of the body, or breaks, fractures, or burns of the second or third degree.

 Id.

 Â¶19Â Â Â Â Â Â Â Â  As pertinent to the issue in this appeal, section 1-10(a) of the Code further provides that

 [i]t shall be unlawful for any person to violate, disobey, omit, neglect, refuse or fail to comply with . . . any provision of this Code, the City Charter or any other ordinance of the City of Lafayette . . . except that unless conduct is specifically designated criminal herein, any offense which is not punishable by imprisonment in jail is not criminal and is deemed decriminalized.

 Â¶20Â Â Â Â Â Â Â Â  Under the Code, the nature of an offense as criminal or noncriminal is partly determinative of the defendantâs right to a jury trial. Section 65-112 states that every person eighteen years or older who complies with the Colorado statutes and the ColoradoÂ rules of municipal court procedures shall be entitled to a jury trial unless â[t]he defendant is accused of violating a municipal ordinance or section of the municipal charter which ordinance or section of the municipal charter is neither criminal nor punishable by imprisonment under any counterpart state statute.â Id. at 65Â­112(a)(2).

 IV. Jury Trials for Petty Offenses Under Colorado Law

 Â¶21Â Â Â Â Â Â Â Â  The Colorado Constitution requires that an accused shall have the right to a trial by an impartial jury in criminal prosecutions. Colo. Const. art. II, Â§Â§ 16, 23. In Austin v. City and County of Denver, 170 Colo. 448, 462 P.2d 600 (1969), the Colorado Supreme Court interpreted this state constitutional guarantee to a jury trial to exclude prosecutions of petty offenses. See City of Aurora v. Erwin, 706 F.2d 295, 298 (10th Cir. 1983).

 Â¶22Â Â Â Â Â Â Â Â  However, within months of the Austin decision, the General Assembly enacted statutes specifically providing for a right to a jury trial in municipal petty offense cases. Â§Â§ 13-10-114(1), 16-10Â­109(2), C.R.S. 2015; see Erwin, 706 F.2d at 298. In enacting this legislation, the General Assembly foundÂ 

 that the right to a trial by jury for petty offenses, as defined in section 16-10-109, C.R.S., is of vital concern to all of the people of the state of Colorado and that the interests of the state as a whole are so great that the general assembly shall retain sole legislative jurisdiction over the matter, which is hereby declared to be of statewide concern.

 Â§ 13-10-101, C.R.S. 2015.

 Â¶23Â Â Â Â Â Â Â Â  Section 13-10-114(1) provides that â[i]n any action before a municipal court in which the defendant is entitled to a jury trial by the constitution or the general laws of the state, such party shall have a jury upon request.â

 Â¶24Â Â Â Â Â Â Â Â  Section 16-10-109 expressly pertains to jury trials for petty offenses. Section 16-10-109(1) defines âpetty offenseâ as follows:

 For the purposes of this section, âpetty offenseâ means any crime or offense classified as a petty offense or, if not so classified, which is punishable by imprisonment other than in a correctional facility for not more than six months, or by a fine of not more than five hundred dollars, or by both such imprisonment and fine, and includes any violation of a municipal ordinance or offense which was not considered a crime at common law; except that violation of a municipal traffic ordinance which does not constitute a criminal offense or any other municipal charter, municipal ordinance, or county ordinance offense which is neither criminal nor punishable by imprisonment under anyÂ counterpart state statute shall not constitute a petty offense.

 Â¶25Â Â Â Â Â Â Â Â  Section 16-10-109(2) then provides for a jury trial and outlines the procedure for requesting a jury trial for an accused charged with a petty offense:

 A defendant charged with a petty offense shall be entitled to a jury trial if, within twenty-one days after entry of a plea, the defendant makes a request to the court for a jury trial, in writing, and tenders to the court a jury fee of twenty-five dollars unless the fee is waived by the judge because of the indigence of the defendant.

 The City concedes that Roalstad correctly followed the procedures required in section 16-10-109 in this case, and asserts only that the offense in the vicious animal ordinance is not a petty offense.

 Â¶26Â Â Â Â Â Â Â Â  The Colorado Supreme Court has consistently interpreted the statutory right to a jury trial for petty offenses as bestowing a âsubstantive right.â Garcia v. People, 200 Colo. 413, 415, 615 P.2d 698, 699-700 (1980); Hardamon v. Mun. Court in and for City of Boulder, 178 Colo. 271, 275-76, 497 P.2d 1000, 1002-03 (1972); see also Â§ 16-10-101, C.R.S. 2015.

 V. The Statutory Right to a Jury Trial: Section 16-10-109

 Â¶27Â Â Â Â Â Â Â Â  As this case deals solely with the right to a jury trial for petty offenses under section 16-10-109, we must determine if the ordinances at issue here describe a petty offense. We conclude that they do.

 A. General Definition of Petty Offense

 Â¶28Â Â Â Â Â Â Â Â  The definition of petty offense in section 16-10-109 is complex. Here, the ordinances at issue, sections 25-85 and 25-89, do not expressly classify the offense as petty or otherwise, and thus we must turn to the second part of the definition of âpetty offenseâ in section 16-10-109(1): an offense âpunishable by imprisonment other than in a correctional facility for not more than six months, or by a fine of not more than five hundred dollars, or by both such imprisonment and fine, and includes any violation of a municipal ordinance or offense which was not considered a crime at common law.â (Emphasis added.)Â 

 Â¶29Â Â Â Â Â Â Â Â  Neither party argues that the vicious animal offense in section 25-85 was a crime under common law,[1] and we therefore limit our analysis to the punishments mandated by the ordinance.

 Â¶30Â Â Â Â Â Â Â Â  Based on our analysis of the fines set forth for a violation of section 25-85, we conclude that the Cityâs vicious animal ordinance is a petty offense under the general definition in section 16-10Â­109(1). The record indicates that this was Roalstadâs first alleged offense under the ordinance. Therefore, she is subject to either a fine of at least $250, or a fine of at least $500, both of which could fall under the definition of petty offense.[2] Â§ 16-10-109(1); Lafayette Rev. Mun. Code 25-89(a)(10), (b)(5); see also Trinen v. Diamond, 44 Colo. App. 325, 326, 616 P.2d 986, 987 (1980) (the plaintiff wasÂ charged with violations of the Denver municipal code regarding overtime parking, where maximum punishment for each violation was a $5 fine; under section 16-10-109, the ordinance was a petty offense and the accused was entitled to a jury trial).[3]

 Â¶31Â Â Â Â Â Â Â Â  We reject the Cityâs (and the district courtâs) reliance on Byrd v. Stavely. Byrd is a Sixth Amendment case that does not involve a municipal ordinance. Byrd, 113 P.3d 1273. In that case, a division of this court concluded that the state criminal offense of driving while ability impaired (DWAI) was a petty offense under the Sixth Amendment and section 16-10-109 because the statute provided for imprisonment for not more than 180 days and a fine of not more than $500. Id. at 1278.[4] That case has nothing to do withÂ determining whether a municipal ordinance is a petty offense under section 16-10-109, the question at issue here.

 B. Exception

 Â¶32Â Â Â Â Â Â Â Â  Having decided that the offense in section 25-85 meets the general definition of petty offense in section 16-10-109(1) because it imposes fines that meet that definition and because it is not a crime at common law, we must address the exception to the petty offense definition. There are two parts to the exception to the definition relevant here. A âmunicipal charter, municipal ordinance, or county ordinance offense which is neither criminal nor punishable by imprisonment under any counterpart state statuteâ is not a petty offense. Â§ 16-10-109(1). We conclude that neither part of the exception applies here to preclude the Cityâs vicious animal offense from being a petty offense.

 1.Â Â Â Â  C.R.S. Counterpart

 Â¶33Â Â Â Â Â Â Â Â  Roalstad asserted in the district court, and reasserts on appeal, that section 18-9-204.5, C.R.S. 2015, titled â[u]nlawful ownership of a dangerous dog,â is a state statutory counterpart to sections 25-85 and 25-89 of the Code. For the reasons set forth below, we agree.

 Â¶34Â Â Â Â Â Â Â Â  In interpreting a statute, courts look first to the statutory language at issue, giving words and phrases their plain and ordinary meanings. Mendoza v. Pioneer Gen. Ins. Co., 2014 COA 29, Â¶10. When the legislature defines a term in a statute, that definition governs. Id. at Â¶24. âHowever, where, as here, the statute does not define a term, the word at issue is a term of common usage, and people of ordinary intelligence need not guess at its meaning, we may refer to dictionary definitions in determining the plain and ordinary meaning.â Id. In this case, neither section 16-10-109 nor section 16-1-104, C.R.S. 2015, the definitions section of the Code of Criminal Procedure (title 16), defines the term âcounterpart.â Thus, we turn to the dictionary definitions of that term to ascertain its plain and ordinary meaning as the term is one of common usage and people of ordinary intelligence need not guess its meaning. Mendoza, Â¶24.

 Â¶35Â Â Â Â Â Â Â Â  Websterâs unabridged dictionary defines âcounterpartâ as âone remarkably similar to another: a person or thing so like another that it seems a duplicate.â Websterâs Third New International Dictionary 520 (2002); see also Websterâs College Dictionary 311Â (1991) (defining âcounterpartâ as âa person or thing closely resembling another, esp. in functionâ).

 Â¶36Â Â Â Â Â Â Â Â  Accordingly, we must determine whether the Cityâs ordinances regarding vicious animals, specifically sections 25-85 and 25-89, are remarkably similar to or closely resemble section 18-9-204.5.

 Â¶37Â Â Â Â Â Â Â Â  Section 18-9-204.5 is a comprehensive statute dealing with dangerous dogs. A âdangerous dogâ is any dog that: (I) Inflicts bodily or serious bodily injury upon or causes the death of a person or domestic animal; or (II) Demonstrates tendencies that would cause a reasonable person to believe that the dog may inflict bodily or serious bodily injury upon or cause the death of any person or domestic animal; or (III) Engages in or is trained for animal fighting as described and prohibited in section 18-9Â­204. Â§ 18-9-204.5(2)(b). In our view, this definition is remarkably similar to the Codeâs definition of âvicious animalâ in that it encompasses an animal that actually attacks, an animal that threatens to attack, and any animal that is trained for fighting as prohibited in section 18-9-204.5. The City also uses language for its chapter 25 definitions of âbodily injuryâ and âserious bodily injuryâ identical toÂ that in section 18-9-204.5(2)(a), (f). Compare Lafayette Rev. Mun. Code 25-2, with Â§ 18-9-204.5(2)(a), (f).

 Â¶38Â Â Â Â Â Â Â Â  Also, like the Cityâs ordinance, section 18-9-204.5 makes it unlawful to own, possess, harbor, keep, have a financial or property interest in, or have custody or control over a dangerous dog. Â§ 18Â­9-204.5(3)(a). The only difference between this definition and the Cityâs is that the statute includes those who have a financial or property interest in the dangerous animal. Compare Â§ 18-9Â­204.5(3)(a), with Lafayette Rev. Mun. Code 25-2. This difference is not significant.

 Â¶39Â Â Â Â Â Â Â Â  The statute explicitly requires that the dangerous dog inflict bodily injury or serious bodily injury on a person or domestic animal, or destroy property, for the crime to be completed. Â§ 18-9Â­204.5(3)(b)-(d). Punishments ascribed to each type of violation range from a class 1 petty offense to a class 5 felony, depending on the severity of the injury to person, animal, or property. All the classifications carry the risk of imprisonment; indeed, some require imprisonment as a sentence. Â§ 18-1.3-503(1), C.R.S. 2015 (petty offense sentencing structure); Â§ 18-1.3-501(1)(a), C.R.S. 2015 (sameÂ misdemeanors); Â§ 18-1.3-401(1)(a)(V)(A), C.R.S. 2015 (same felonies).

 Â¶40Â Â Â Â Â Â Â Â  The City argues that section 18-9-204.5 is not a counterpart to its vicious animal ordinances because the statute concerns more serious offenses that require bodily injury or serious bodily injury, while the ordinances do not require any injury. We disagree for several reasons.

 Â¶41Â Â Â Â Â Â Â Â  First, for a defendant to be sentenced to a fine of at least $250, the offense must be the defendantâs first offense and the animal must have caused âless than bodily injury.â Lafayette Rev. Mun. Code 25-89(b). Thus, as mentioned above, the sentence of not more than $500 for a first offense implicitly requires that there be bodily injury. Id. at 25-89(a)(10).

 Â¶42Â Â Â Â Â Â Â Â  Second, the only places that the terms âbodily injuryâ and âserious bodily injuryâ are used in chapter 25 are in section 25-89 and in the section dealing with euthanization of the vicious animal if it inflicted serious bodily injury, see Lafayette Rev. Mun. Code 25Â­91. The City included these terms in its definitions section for a reason, and we interpret statutes and ordinances to give effect to all of their parts and avoid rendering any part superfluous. SeeÂ Brodeur v. Indus. Claims Appeals Office, 159 P.3d 810, 813 (Colo. App. 2007). We conclude that both the ordinances and the statute require bodily or serious bodily injury before certain sanctions or certain punishments may be imposed.

 Â¶43Â Â Â Â Â Â Â Â  And, third, section 18-9-204.5, by its own terms, does not always require bodily injury or serious bodily injury. The statute also criminalizes behavior when the dangerous dog merely destroys property, and classifies such an offense as a class 1 petty offense. Â§ 18-9-204.5(3)(e)(III)(B.5). A class 1 petty offense is punishable by a fine of not more than $500, or 6 months imprisonment, or both. Â§Â§ 16-10-109(1), 18-1.3-503(1).

 Â¶44Â Â Â Â Â Â Â Â  In addition to functionally criminalizing the same behavior â owning a vicious or dangerous animal â the ordinance and the statute are similar in many other respects[5]:

 
 Â Both provide for the impounding and euthanizing of the vicious animal/dangerous dog under specific circumstances, Â§ 18-9-204.5(3)(f), (3)(g), (4); Lafayette Rev. Mun. Code 25-87, 25-91.

 
 Both exempt government employees who use animals in the course of their duties, Â§ 18-9-204.5(6)(a); Lafayette Rev. Mun. Code 25-86.

 
 Both provide for affirmative defenses to the charge, some of which are very similar, such as the alleged vicious animal defending itself or a person, Â§ 18-9-204.5(3)(h)(I); Lafayette Rev. Mun. Code 25-85(b).

 
 Both impose numerous conditions on the owner to keep the animal, including:



 
 providing secure enclosures for the animal, Â§ 18-9-204.5(3)(e.5)(I); Lafayette Rev. Mun. Code 25Â­89(a)(3);

 
 specifications for the use of leashes and muzzles, Â§ 18-9-204.5(e.5)(I); Lafayette Rev. Mun. Code 25Â­89(a)(5);

 
 posting warning signs regarding the dangerous/vicious animal, Â§ 18-9-204.5(e.5)(I); Lafayette Rev. Mun. Code 25-89(a)(6);

 
 reporting a material change in the animalâs situation, such as being at large, stray, or stolen, Â§ 18-9-204.5(e.5)(II); Lafayette Rev. Mun. Code 25Â­89(a)(8);

 
 implanting a microchip in the animal, Â§ 18-9-204.5(e.5)(III); Lafayette Rev. Mun. Code 25-89(a)(2); and

 
 restricting the sale or transfer of the animal, Â§ 18-9-204.5(e.5)(VI); Lafayette Rev. Mun. Code 25-89(a)(7). Â¶45Thus, the statute and ordinances are âremarkably similarâ in that they proscribe the same conduct, base sentencing on the severity of the attack, allow for similar affirmative defenses, and require many of the same conditions on the owner for keeping the animal in his or her possession. Both also provide mechanisms for impounding and euthanizing animals. Hence, in our view, they are so similar to one another in function that they seem duplicative.



 Â¶46Â Â Â Â Â Â Â Â  We also note that the statute states that â[n]othing in this section shall be construed to prohibit a municipality from adopting any rule or law for the control of dangerous dogs.â Â§ 18-9Â­204.5(5)(a). A similar provision in the theft statute was considered by a division of this court to âbuttressâ its conclusion that the district court properly designated the theft statute a counterpart to a municipal ordinance. Bradford v. Longmont Mun. Court, 830 P.2d 1135, 1137 (Colo. App. 1992) (theft statute specifically granted a municipality the power to prohibit theft, by ordinance, where the value of the thing involved was less than the statutory minimum).

 Â¶47Â Â Â Â Â Â Â Â  For the foregoing reasons, we conclude that section 18-9Â­204.5 is a counterpart to chapter 25 of the Code, including the offense of owning a vicious animal (section 25-85) and the resulting penalties in section 25-89.

 2. Criminal in Nature

 Â¶48Â Â Â Â Â Â Â Â  Next, we consider whether section 25-85 and its sentencing provisions are criminal in nature. We conclude that they are.

 Â¶49Â Â Â Â Â Â Â Â  First, the plain language of the specific ordinances at issue clearly speaks in terms of criminal rather than civil liability. The ordinances state that it is âunlawfulâ to own a vicious animal andÂ that any person âconvictedâ of such an âoffenseâ is subject to the provisions of section 25-89. Lafayette Rev. Mun. Code 25-85(a). In a civil case, one is not âconvictedâ of an âoffense,â but is only found liable or not liable. Although not dispositive, we also find it instructive, given the language in section 25-89(a), that the Colorado criminal code specifically states that â[t]he terms âoffenseâ and âcrimeâ are synonymousâ and mean a violation of state statute. Â§ 18-1-104(1), C.R.S. 2015.

 Â¶50Â Â Â Â Â Â Â Â  Under section 25-89(a), once a âconviction,â a âplea of guilty,â or plea of âno contestâ to a âchargeâ of owning a vicious animal has been entered, the owner is subject to numerous conditions. An accused enters a plea of guilty or a plea of no contest in criminal actions. Â§ 16-7-205, C.R.S. 2015 (listing the available pleas for a defendant, including guilty and no contest); Crim. P. 11 (a defendant can plead guilty, not guilty, not guilty by reason of insanity, or, with the consent of the court, nolo contendere (no contest)). Also, the fines for a violation of the ordinances are in addition to the conditions set forth in subsection (a) and any other âsentence provisionsâ the municipal judge imposes. Lafayette Rev.Â Mun. Code 25-89(a)(10). Notably, one is not sentenced in a noncriminal matter.

 Â¶51Â Â Â Â Â Â Â Â  Hence, we conclude that the plain language of the ordinances at issue here alone renders sections 25-85 and 25-89 criminal in nature.

 Â¶52Â Â Â Â Â Â Â Â  The City argues that, pursuant to section 1-10 of the Code, it has âdecriminalizedâ the vicious animal ordinance because it has not expressly classified it as criminal and because the offense is not punishable by imprisonment. We disagree.

 Â¶53Â Â Â Â Â Â Â Â  We first note that the fact that a violation is punishable by fine alone does not dictate the character of the violation as criminal or noncriminal, but merely reflects the severity of the violation. City of Greenwood Village v. Fleming, 643 P.2d 511, 517 (Colo. 1982). Thus, the fact that the ordinance here imposes only a fine does not mean that it is not criminal in nature. This is supported by the fact that a class 2 petty offense is punishable âby the fine specified in the section defining the offenseâ and not imprisonment, yet an offense classified as a class 2 petty offense would be subject to a jury trial under section 16-10-109. Â§Â§ 16-10-109(1) (petty offense means those offenses classified as such); 18-1.3-503(1).

 Â¶54Â Â Â Â Â Â Â Â  In section 13-10-101, the General Assembly reserved for itself all legislative power to define the right to a trial by jury for petty offenses. That section references section 16-10-109, which excludes from the definition of petty offense, and thus also precludes the possibility of a jury trial, violations of municipal ordinances that are not âcriminal.â A municipality cannot simply avoid providing a jury trial under section 16-10-109 by purporting to decriminalize an ordinance that has a counterpart in the Colorado criminal statutes and would otherwise be criminal. To allow such âdecriminalizationâ by municipalities would be to allow the forum in which an accused is tried to dictate his or her right to a jury trial, which is contrary to the legislative intent of sections 13Â­10-101, 13-10-114, 16-10-101, and 16-10-109, and Colorado case authority. See Erwin, 706 F.2d at 298-99 (as intended by the language of section 13-10-101 and Hardamon, 178 Colo. at 275-78, 497 P.2d at 1002-03, the right to a jury trial under section 16-10Â­109 is a substantive right that cannot be abridged by the forum of the proceedings).

 VI. Conclusion

 Â¶55Â Â Â Â Â Â Â Â  For the reasons set forth above, we conclude that the prohibition against owning vicious animals in the Code is a petty offense under section 16-10-109. Thus, as a matter of law, Roalstad is entitled to a jury trial in municipal court on the charge against her. Therefore, the district courtâs order granting the Cityâs motion to dismiss is reversed, and the case is remanded with directions to the district court to enter judgment for Roalstad on her claim for declaratory relief.[6]

 JUDGE MÃRQUEZ and JUDGE VOGT concur.


 [1] In any event, we note that in Colorado, common law crimes have been characterized as proscribing âmorally blameworthyâ behavior. People v. Ellison, 14 P.3d 1034, 1037 (Colo. 2000). We are satisfied that ownership of a vicious animal is not a morally blameworthy offense and, thus, would not be considered a crime at common law. Cf. People v. Manzo, 144 P.3d 551, 558 (Colo. 2006) (distinguishing between common law crimes and public welfare offenses); Ellison, 14 P.3d at 1037-38 (same).

 [2] The record on appeal does not include any facts about the alleged attack or the injuries sustained by the alleged victim. Although the record shows that this was Roalstadâs first alleged offense, it does not indicate if some form of bodily injury was sustained or if the injury was something âless than bodily injury.â Lafayette Rev. Mun. Code 25-89(b).

 [3] We recognize that Trinen was decided prior to the amendments to section 16-10-109, C.R.S. 2015, excluding traffic offenses from the definition of petty offense. However, we cite it here for the proposition that municipal ordinances imposing fines alone can fall under the definition of petty offense.

 [4] However, the division went on to decide that, despite the classification as a petty offense, the defendants were not required to follow the jury trial request procedures of section 16-10-109 because the structure of the statute in which the DWAI offense was defined indicated the General Assemblyâs intent that it be treated as a âserious crime.â Byrd v. Stavely, 113 P.3d 1273, 1279 (Colo. App. 2005).

 [5] The statute and the ordinance differ in that a single statute contains all of the provisions pertaining to dangerous dogs, while the components of owning and maintaining a vicious animal are spread throughout chapter 25 of the Code. This difference is one of form, not of substance, and does not preclude the statute from being a counterpart to the ordinance at issue here. However, because of the Cityâs decision to spread the relevant pieces of owning a vicious animal among multiple sections, we cite to more than just section 25-85 and 25-89 to show similarities between the statute and the ordinances.

 [6] It is unclear from the record whether Roalstad has already been tried and convicted of the vicious dog ordinance in the municipal court. If she has been convicted in a trial to the court, the district court is directed to vacate her conviction and remand to the municipal court for a new trial where Roalstad must be allowed to present her case to a jury pursuant to section 16-10-109.




These opinions are not final. They may be modified, changed or withdrawn in accordance with Rules 40 and 49 of the Colorado Appellate Rules. Changes to or modifications of these opinions resulting from any action taken by the Court of Appeals or the Supreme Court are not incorporated here. 



Colorado Court of Appeals Opinions || October 8, 2015


Back