Opinion by CHIEF JUDGE LOEB
¶ 1 In this C.R.C.P. 106 action, plaintiff, Anass Khelik, appeals from the district court's judgment affirming an order of the City and County of Denver's Career Service Board (Board) relating to disciplinary proceedings against him by the Denver Sheriff Department (DSD). The sole issue on appeal is whether the Board abused its discretion by misinterpreting a DSD disciplinary rule and concluding that a charge of conduct unbecoming does not require the DSD to prove actual harm to the City or the DSD. Because we conclude the Board's interpretation of that rule is reasonable, we perceive no abuse of discretion and, therefore, affirm the judgment.
I. Background and Procedural History
¶ 2 The Board was created by the Denver City Charter and is responsible for "adopting, administering, and enforcing rules necessary to foster and maintain" a merit-based personnel system in the City and County of Denver; the Board governs human resources issues, including disciplinary matters, for all City and County of Denver employees. Denver Rev. Mun. Code 18-1, 18-2; City and County of Denver, Career Service Rules 2-10 (Feb. 10, 2012), https://perma.cc/UTU9-TMTB. Employees of the DSD are governed by these Career Service Rules as well as the DSD's own disciplinary rules (DSD Rules); the DSD is a division of the Department of Safety.
¶ 3 Khelik is a sergeant in the DSD and, thus, is subject to both the Career Service Rules and the DSD Rules.
¶ 4 In 2012, Ashley Kilroy, the Deputy Manager of Safety for the Department of Safety, authored and delivered to Khelik a disciplinary notice suspending him without pay for inappropriate interactions with one of the female officers under his command and retaliating against her for stating her intention to file a sexual harassment complaint. Briefly, the allegations underlying the disciplinary action were that Khelik began circulating rumors that the officer was pregnant with his child, that he made inappropriate sexual jokes, and that he told her that he loved her in her formal annual review meeting.[1] During this meeting, the officer stated she could file a sexual harassment complaint, and Khelik allegedly responded that he would sign the complaint for her. The day after the annual meeting, the officer was moved to a new position that Kilroy found was less desirable than the officer's previous position.
¶ 5 In her notification letter to Khelik, Kilroy cited Career Service Rule 16-60(L) regarding discipline and dismissal and then cited DSD Rules related to harassment, sexual *1022 harassment, conduct prejudicial, and retaliatory conduct. The notification specified that Khelik had violated all of the enumerated DSD Rules. Kilroy imposed a two-day suspension for Khelik's conduct relating to harassment and a thirty-day suspension for his retaliatory conduct.
¶ 6 Khelik appealed his suspension to a hearing officer in the Career Service Authority. During the two-day hearing, Kilroy testified as to her reasoning regarding the rule violations. She specifically testified that she charged Khelik with violating DSD Rule 300.11.6 Conduct Prejudicial, because it encompasses broader conduct than Career Service Rule 16-60(Z) for Conduct Prejudicial. She elaborated that DSD Rule 300.11.6 is unique because it included the paramilitary organization charge of conduct unbecoming, which was intended by the committee that drafted the rule to govern situations where law enforcement officers should be held to a higher standard than other career service employees due to their significant authority over ordinary citizens.
¶ 7 As relevant here, the hearing officer interpreted DSD Rule 300.11.6 to require a showing of harm to the DSD because it was "nearly identical" to Career Service Rule 16-60(Z), which, according to prior Board decisions, does require a showing of harm.[2] The hearing officer further concluded that the DSD had not made a showing of actual harm below and, therefore, Khelik had not violated DSD Rule 300.11.6.
¶ 8 The DSD filed a petition for review with the Board, challenging the hearing officer's interpretation of DSD Rule 300.11.6 on the grounds that it amounted to an erroneous interpretation of an agency regulation and that it set bad policy precedent.[3]
¶ 9 In a detailed written order, the Board vacated the hearing officer's interpretation of DSD Rule 300.11.6 and concluded that the conduct unbecoming charge under that rule did not require a showing of actual harm to the City or the DSD. In its reasoning, it noted that Career Service Rule 16-60(Z) was materially different from DSD Rule 300.11.6 because the DSD Rule has significant additional language, specifically, language including the charge of conduct unbecoming and two further subsections which are not included in Career Service Rule 16-60(Z).
¶ 10 Khelik appealed the Board's order to the Denver District Court, which then affirmed. Khelik now appeals to this court, asserting that a conduct unbecoming charge under DSD Rule 300.11.6 requires a showing of actual harm and that the Board's decision should be reversed.
II. Standard of Review and Applicable Law
¶ 11 C.R.C.P. 106(a)(4)(I) provides:
Where any governmental body or officer or any lower judicial body exercising judicial or quasi-judicial functions has exceeded its jurisdiction or abused its discretion, and there is no plain, speedy and adequate remedy otherwise provided by law: (I) Review shall be limited to a determination of whether the body or officer has exceeded its jurisdiction or abused its discretion, based on the evidence in the record before the defendant body or officer.
¶ 12 Thus, in a C.R.C.P. 106(a)(4) action, "judicial review of a governmental agency exercising its quasi-judicial role ... is limited to whether the body has exceeded its jurisdiction or abused its discretion."
*1023 City of Commerce City v. Enclave W., Inc., 185 P.3d 174, 178 (Colo.2008). We review the decision of the Board, not that of the district court. See Woods v. City & Cty. of Denver, 122 P.3d 1050, 1053 (Colo.App.2005). We sit in the same position as the district court when reviewing an agency decision under C.R.C.P. 106(a)(4). Roalstad v. City of Lafayette, 2015 COA 146, ¶ 13, 363 P.3d 790. Therefore, we review de novo whether the agency has abused its discretion. Id.
¶ 13 An agency abuses its discretion if its decision is not reasonably supported by any competent evidence in the record, or if the agency has misconstrued or misapplied applicable law. Freedom Colo. Info., Inc. v. El Paso Cty. Sheriff's Dep't, 196 P.3d 892, 899-900 (Colo.2008) ; Roalstad, ¶ 13. An action by an administrative agency is not arbitrary or an abuse of discretion when the reasonableness of the agency's action is open to a fair difference of opinion, or when there is room for more than one opinion. Bennett v. Price, 167 Colo. 168, 172, 446 P.2d 419, 420-21 (1968).
¶ 14 "In reviewing the agency's construction, we rely on the basic rules of statutory construction, affording the language of the provisions at issue their ordinary and common sense meaning." Enclave W., Inc., 185 P.3d at 178. "Our primary task in interpreting statutes and municipal enactments is to give effect to the intent of the drafters, which we do by looking to the plain language." Waste Mgmt. of Colo., Inc. v. City of Commerce City, 250 P.3d 722, 725 (Colo.App.2010). If the language of the provision at issue is clear and the intent of the legislative body that enacted it may be discerned with certainty, we need not resort to other rules of statutory interpretation. Id. When construing an ordinance in the C.R.C.P. 106(a)(4) context, "we give effect to every word and, if possible, harmonize potentially conflicting provisions." Enclave W., Inc., 185 P.3d at 178.
¶ 15 The use of the disjunctive "or" in a list reflects a choice of equally acceptable alternatives. Willhite v. Rodriguez-Cera, 2012 CO 29, ¶ 18, 274 P.3d 1233 ; People v. Swain, 959 P.2d 426, 430 n. 12 (Colo.1998). In fact, "when the word 'or' is used in a statute, it is presumed to be used in the disjunctive sense, unless legislative intent is clearly to the contrary." Armintrout v. People, 864 P.2d 576, 581 (Colo.1993).
¶ 16 When a number of acts are joined in a single sentence without any attempt to differentiate them through an organizational device, the drafter intended to describe alternative means of committing the same offense. People v. Morales, 2014 COA 129, ¶ 56, 356 P.3d 972. Similarly, subsections demarcated by a semicolon and the word "or" are interpreted to be disjunctive and denote alternative ways of committing a single crime. E.g., People in Interest of M.C., 2012 COA 64, ¶ 16, 292 P.3d 1030. Colorado courts have also concluded that when a statute is divided into two subsections, even without the use of the word "or," the subsections are "disjunctive in the very nature of the construction of the section." People v. Barry, 2015 COA 4, ¶ 98, 349 P.3d 1139 (quoting Cortez v. People, 155 Colo. 317, 320, 394 P.2d 346, 348 (1964) ).
¶ 17 In a C.R.C.P. 106 action, a reviewing court will give "deference to the interpretation provided by the officer or agency charged with the administration of the code or statute unless that interpretation is inconsistent with the legislative intent manifested in the text of the statute or code." Waste Mgmt. of Colo., 250 P.3d at 725. In that regard, "[t]he agency's interpretation of the rule should be given great weight unless plainly erroneous or inconsistent with the rule." Bryant v. Career Serv. Auth., 765 P.2d 1037, 1038 (Colo.App.1988). Similarly, we may give deference to the agency's reasonable interpretation involving matters within the agency's area of expertise. Sheep Mountain All. v. Bd. of Cty. Comm'rs, 271 P.3d 597, 601 (Colo.App.2011). In the law enforcement context, "police department regulations are entitled to considerable deference because of the State's substantial interest in creating and maintaining an efficient police organization." Puzick v. City of Colorado Springs, 680 P.2d 1283, 1286 (Colo.App.1983) (citing Kelley v. Johnson, 425 U.S. 238, 247, 96 S.Ct. 1440, 47 L.Ed.2d 708 (1976) ). However, we are not bound by the agency's construction because our review of the law is de novo. Enclave W., Inc., 185 P.3d at 178 ; Sheep Mountain All., 271 P.3d at 601.
*1024 III. Relevant Rules and Regulations
¶ 18 Khelik was charged under Career Service Rule 16-60(L), which reads:
The following may be cause for the discipline or dismissal of a Career Service employee: ... (L) Failure to observe written departmental or agency regulations, policies or rules. When citing this subsection, a department or agency must cite the specific regulation, policy or rule the employee has violated.
¶ 19 As relevant here, Khelik was charged under that rule with violating DSD Rule 300.11.6 Conduct Prejudicial:
Deputy Sheriffs and employees shall not engage in conduct prejudicial to the good order and effectiveness of the department or conduct that brings disrepute on or compromises the integrity of the City or the Department or conduct unbecoming which:
(a) May or may not specifically be set forth in Department rules and regulations or the Operations Manual; or
(b) Causes harm greater than would reasonably be expected to result, regardless of whether the misconduct is specifically set forth in Department rules and regulations or the Operations Manual.
Denver Sheriff Department, Discipline Handbook: Conduct Principles and Disciplinary Guidelines Rule 300.11.6 (Jan. 1, 2011), https://perma.cc/7B8M-R5QP.[4]
¶ 20 The Career Service Rule regarding conduct prejudicial reads as follows: "The following may be cause for the discipline or dismissal of a Career Service employee: ... (Z) Conduct prejudicial to the good order and effectiveness of the department or agency, or conduct that brings disrepute on or compromises the integrity of the City." Career Serv. R. 16-60(Z).
IV. Application
¶ 21 As noted, the sole issue on appeal is whether the Board abused its discretion in its interpretation of DSD Rule 300.11.6. Khelik contends the Board erred as a matter of law because the language of DSD Rule 300.11.6 plainly requires proof of actual harm to the City or the DSD to establish a "conduct unbecoming" violation of that rule. We disagree and, for the reasons below, conclude that the Board's interpretation was reasonable and not an abuse of its discretion.
¶ 22 The hearing officer concluded that "[t]he language of [DSD Rule] 300.11.6 and [Career Service Rule] 16-60 Z. is nearly identical. [DSD Rule] 300.11.6 at (b), and [Career Service Rule] 16-60 Z., reinforce the reading of both rules as requiring proof of harm to the [DSD] or the City.... Since no actual harm to either the [DSD] or to the City was shown by the [DSD]'s evidence, no violation is proven under the [DSD Rule]."
¶ 23 On review, the Board concluded that the hearing officer's determination regarding DSD Rule 300.11.6 was both an erroneous interpretation based on rules of statutory interpretation and bad policy precedent. In supporting these conclusions, the Board found that Career Service Rule 16-60(Z) is not "nearly identical" to DSD Rule 300.11.6 and that the DSD Rule should be interpreted considering the rule as a whole, not just considering subsection (b). It further concluded that subsections (a) and (b) are disjunctive and that DSD Rule 300.11.6 "can be violated if conduct satisfies subsection (a) regardless of whether it meets the criteria of subsection (b)."
¶ 24 The Board emphasized that "while one portion of the [DSD Rule] does resemble the Career Service Rule, there is additional language to the [DSD Rule] that does not resemble the [Career Service] [R]ule. The differing language gives rise to an inference that the two need not be interpreted the same way." Following this logic, the Board found that the hearing officer's interpretation would render DSD Rule 300.11.6 superfluous because there was no reason for the "DSD to have adopted the [DSD Rule] if it simply *1025 intended to parrot an existing [Career Service] [R]ule."
¶ 25 In further support of this holding, the Board compared DSD Rule 300.11.6 to the Denver Police Department's Conduct Prejudicial rule, which, it noted, is identical to Rule 300.11.6 in all respects except that the police department's rule prohibits only conduct prejudicial to the good order and effectiveness of the police department and conduct unbecoming; it does not prohibit conduct that brings disrepute on or compromises the integrity of the City or the police department. The Board noted that the police department's handbook does not mention a requirement of harm at all in connection with its rule. Thus, the Board found it proper to allow the DSD to interpret its internal "conduct prejudicial" rule similar to the interpretation adopted by the police department.
¶ 26 From a policy standpoint, the Board relied heavily on Kilroy's testimony that DSD Rule 300.11.6 is intended to be broader than Career Service Rule 16-60(Z), that professionalism is a guiding principle of the DSD administration, that supervisors are held to a higher standard of professionalism because they are supposed to model behavior for subordinates, and that DSD Rule 300.11.6 is intended to resemble standards of conduct found in the military and in paramilitary organizations.
¶ 27 Ultimately, the Board credited Kilroy's testimony and concluded that the record warranted
a finding that, from a public policy perspective, the [DSD], a paramilitary organization, should be able to enforce a code of ethics and conduct on its employees that requires more of them than what might be expected of other employees of the Career Service. We believe a reading of ... 300.11.6, which does not require a showing of harm of [sic] the City or Agency, can be a necessary and effective tool for the Agency to enforce these standards of professionalism.[5]
¶ 28 We cannot say that the Board abused its discretion in interpreting DSD Rule 300.11.6. In our view, the Board's reasoning is consistent with basic principles of statutory interpretation and reflects the plain language of the rule as well as the intent of the drafters and the policy considerations behind the rule. The Board appropriately relied on Kilroy's testimony regarding the intent of the drafters as the lens for viewing the plain language of the rule itself.
¶ 29 We agree with the Board that Career Service Rule 16-60(Z) and DSD Rule 300.11.6 are different, and that the interpretation of one does not guide the interpretation of the other. While, as the Board noted, there are some similarities between the two rules, there are also significant differences, especially when considering Kilroy's testimony that DSD Rule 300.11.6 was specifically drafted to include the charge of conduct unbecoming in order to reflect the drafters' intent that the rule resemble the higher standards of conduct found in the military and in paramilitary organizations. Thus, we conclude it was not an abuse of discretion for the Board to find that Career Service Rule16-60(Z) and DSD Rule 300.11.6 are meaningfully different.
¶ 30 Contrary to Khelik's arguments, we also agree with the Board that interpreting DSD Rule 300.11.6 to require harm in all cases-including cases charging "conduct unbecoming"-would render Rule 300.11.6 superfluous. If actual harm were required for all charges under Rule 300.11.6, that rule would, in effect, be identical in application to Career Service Rule 16-60(Z); the DSD would have no need to charge an officer with conduct unbecoming under DSD Rule 300.11.6 because it would, in practice, mean *1026 the same thing as Career Service Rule 16-60(Z) prohibiting conduct prejudicial.[6]
¶ 31 Further, we also conclude it was not erroneous for the Board to interpret the use of the word "or" in DSD Rule 300.11.6 as disjunctive. First, the plain language of the opening paragraph of the rule prohibits three types of conduct: conduct prejudicial, conduct that brings disrepute to the City or the DSD, and conduct unbecoming. Those three types of conduct are separated by the word "or" without any other attempt at organization. This indicates that three alternative means of conduct may violate DSD Rule 300.11.6. Morales, ¶ 56.[7]
¶ 32 Second, subsections (a) and (b) of DSD Rule 300.11.6 are separated by a semicolon and the word "or." Even without the word "or," Colorado courts have interpreted separate, delineated subsections as being disjunctive. Barry, ¶ 98. Here, the DSD made it clear that it wanted to impose the disjunctive by using the word "or." Moreover, Colorado courts have consistently interpreted subsections delineated by semicolons and the word "or" as disjunctive and alternative ways to commit the same offense. E.g., M.C., ¶ 16.[8] Thus, the Board reasonably concluded that subsection (a) (which does not mention harm) can be violated by conduct unbecoming that does not cause harm, while a violation of subsection (b) would require a showing of harm.
¶ 33 Finally, we reject Khelik's argument that the use of the word "or" here is a conjunctive joining of two like, synonymous concepts. See Swain, 959 P.2d at 430 n. 12 ; Expedia, Inc. v. City & Cty. of Denver, 2014 COA 87, ¶ 36, 2014 WL 2980979. Where Colorado courts have interpreted "or" to be conjunctive, the word has joined single words or short phrases in the same sentence-not, as is the case here, separate subsections of a statute or rule. See, e.g., Swain, 959 P.2d at 430 (noting that Brewer v. Motor Vehicle Division, Department of Revenue, 720 P.2d 564, 566-67 (Colo.1986), implicitly interpreted "drives or is in actual physical control" to be synonymous); Expedia, Inc., ¶ 36 (interpreting "making sales of or furnishing lodging" conjunctively). In sum, Khelik has not, in our view, pointed to anything in the record or in the basic principles of statutory interpretation that would overcome the presumption that the word "or" in DSD Rule 300.11.6 is used in the disjunctive. Armintrout, 864 P.2d at 581.
V. Conclusion
¶ 34 We conclude that the Board did not abuse its discretion in holding that DSD Rule 300.11.6, which includes conduct unbecoming, does not require a showing of actual harm to the City and County of Denver or the DSD. Accordingly, the judgment is affirmed.
JUDGE STERNBERG* and JUDGE DAVIDSON* concur.

The record shows that this meeting, referred to as a PEPR, was a formal meeting with an officer's direct supervisor that could have an effect on the officer's pay grade.

Career Service Rule 16-60(Z) provides that a career service employee may be disciplined or dismissed for "[c]onduct prejudicial to the good order and effectiveness of the department or agency, or conduct that brings disrepute on or compromises the integrity of the City." City and County of Denver, Career Service Rules 16-60(Z) (Feb. 10, 2012), https://perma.cc/UTU9-TMTB. The hearing officer cited to the Board's decision in Jones v. Department of Aviation, Appeal No. 88-09A (Sept. 16, 2010), which concluded that Career Service Rule 16-60(Z) requires a showing of harm. We do not cite to any Board decisions in this opinion because, while instructive, they are not binding on this court. Moreover, prior to this case, the Board had not interpreted DSD Rule 300.11.6, and specifically not in the context of a charge of "conduct unbecoming."

The hearing officer also found that the DSD had not proven retaliation and that Khelik's thirty-day suspension for that violation should be expunged. However, the DSD did not appeal that decision to the Board; thus, it is not an issue in this appeal.

In their briefs on appeal, the parties cite to the record below for the text of various Career Service and DSD Rules. Our review of the record shows that the parties cited to the electronic Career Service Rules and DSD Discipline Handbook and attached relevant portions of those documents as exhibits to their briefs in the district court. Here, we cite to the full electronic sources as well.

Kilroy's position and the Board's interpretation is further supported by Puzick v. City of Colorado Springs, 680 P.2d 1283, 1286 (Colo.App.1983). In Puzick, a division of this court considered the Colorado Springs Police Department rule regarding conduct unbecoming and found it was not unconstitutionally overbroad, in part because "it is not feasible or necessary for the Government to spell out in detail all that conduct which will result in retaliation. The most conscientious of codes that define prohibited conduct of employees includes 'catchall' clauses prohibiting employee 'misconduct,' 'immorality,' or 'conduct unbecoming.' "Id. (quoting Meehan v. Macy, 392 F.2d 822, 835 (D.C.Cir.1968) ) (alteration omitted). We note that the district court relied on this language from Puzick in determining the intent of the DSD Rule 300.11.6 drafters.

Khelik attempts to distinguish DSD Rule 300.11.6 and Career Service Rule 16-60(Z) on the basis of scope of enforcement, the former allegedly using mandatory language and the latter discretionary. This is simply irrelevant in the context of determining whether the rules prohibit different types of conduct and hence whether one is superfluous given the interpretation of the other.

Neither party appears to dispute this aspect of the Board's interpretation of DSD Rule 300.11.6.

The district court's ruling interprets subsections (a) and (b) of DSD Rule 300.11.6 as applying only to conduct unbecoming. Because the parties do not dispute this point, we need not address the larger question of whether the Board's interpretation that proof of harm is not required could be extended to the other two types of conduct prohibited in that rule.

Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5 (3), and § 24-51-1105, C.R.S.2015.