Ronald U. DUHON, Gloria I. Duhon, and Casey Jimenez, Manager, Plaintiffs–Appellants,

v.

Yvonne I. NELSON, Defendant–Appellee.

No. 03CA2342.

Colorado Court of Appeals, Div. I.

Aug. 11, 2005.

Law Office of Anthony Martinez, P.C., Anthony L. Martinez, Salida, Colorado, for Plaintiffs–Appellants.

Dale R. Enck, Buena Vista, Colorado, for Defendant–Appellee.

Opinion by: Judge MARQUEZ.

In this dispute involving a leased space in a mobile home park, plaintiffs, Ronald U. Duhon and Gloria I. Duhon (owners) and Casey Jimenez (manager), appeal the judgment entered on a jury verdict in favor of defendant, Yvonne I. Nelson (tenant). Plaintiffs also appeal the trial court's orders denying bifurcation, granting a directed verdict in favor of tenant, and denying plaintiffs' motion for judgment notwithstanding the verdict. We affirm and remand for further

proceedings regarding attorney fees and costs.

The Duhons own Fessler's Mobile Home Park. Tenant leased space no. C–24 in the Park under a month-to-month rental agreement beginning in November 1998. During her tenancy, plaintiffs notified tenant of various alleged violations of the Park's rules and regulations.

In January 2001, tenant entered into a listing contract with certain brokers for the sale of property described as "Lot C–24 Fessler's Park," even though she did not own that space. She twice extended the listing contract with the brokers. According to tenant, plaintiffs interfered with her efforts to sell her mobile home.

In August 2002, plaintiffs served tenant with a notice to quit, alleging noncompliance with park rules and notifying her that the lease would expire that month on its own terms and would not be renewed. A month later, plaintiffs filed a complaint against tenant in forcible entry and detainer in county court. Tenant answered the complaint and brought counterclaims for intentional interference with contract, intentional infliction of emotional distress, and outrageous conduct, and the case was transferred to the district court. Although plaintiffs moved for bifurcated trials, the motion was denied, and all claims were tried to a jury.

The trial court entered a directed verdict dismissing plaintiffs' claim regarding expiration of the lease. It also dismissed tenant's counterclaim for severe emotional distress. The jury found against plaintiffs on their complaint in forcible entry and detainer and in favor of tenant on her counterclaim for intentional interference with contract. Plaintiffs then moved for judgment notwithstanding the verdict, but the trial court denied the motion.

## I. Bifurcation

■ Plaintiffs contend that the trial court erred in denying their motion to bifurcate their complaint in unlawful detainer from tenant's counterclaims for tortious interference with contract and intentional infliction of emotional distress. We disagree.

■ Pursuant to C.R.C.P. 42(b), a court may order the separate trial of any separate issue or of any number of claims or counterclaims in the furtherance of convenience, to avoid prejudice, or when separate trials will be conducive to expedition or economy in the adjudicatory process. *See Gaede v. Dist. Court,* 676 P.2d 1186, 1188 (Colo.1984). C.R.C.P. 42 grants the trial court discretion as to whether there should be separate trials. Thus, a court order as to a joint or separate trial will not be disturbed in the absence of a clear showing that there has been an abuse of discretion. *Prudential Prop. & Cas. Ins. Co. v. Dist. Court,* 617 P.2d 556, 558 (Colo. 1980); *Kielsmier v. Foster,* 669 P.2d 630, 633 (Colo.App.1983). An abuse of discretion occurs where the court's failure to order separate proceedings virtually assures prejudice to a party. *Prudential Prop. & Cas. Ins. Co. v. Dist. Court, supra.* However, in the absence of convenience, avoidance of prejudice, or promotion of expedition or economy in the adjudicatory process, C.R.C.P. 42 is not applicable. *Gaede v. Dist. Court, supra.*

### A. Prejudice

Plaintiffs contend that the failure to sever resulted in significant prejudice to their case. They argue that the "jury was confronted with the specter of tossing a silver-haired mother onto the street for reasons portrayed as contrived to inflict intentional emotional harm" and that these issues arose from the expiration of the lease. They argue, in the alternative, that they sought to evict defendant for violation of park rules. According to plaintiffs, the issues are highly emotional and are never submitted to a jury, and the combination of issues with infliction of emotional harm is a "formula for prejudice." We disagree.

Here, plaintiffs' motion for bifurcation alleged that

(1) the lease, by its terms, has expired, with the landlord not wishing to renew the lease with the current tenant[ ]; (2) the delay in a complaint in FED delays the entrance of a new lease for the mobile home space; (3) forcing existing parties to enter into an extension of the existing lease would be an inappropriate interfer-

ence with contract; and (4) the tenant, having repeatedly violated mobile home park rules and having been served with notices, would weaken the management and safety of the mobile home park through an acquiescence that rules are made to be violated.

In our view, none of plaintiffs' arguments support a finding of prejudice.

Generally, under § 13–40–104(1)(c), C.R.S. 2004, a person is guilty of unlawful detention of real property

[w]hen any lessee or tenant at will, or by sufferance, or for any part of a year, or for one or more years, of any real property, including a specific or undivided portion of a building or dwelling, holds over and continues in possession of the demised premises, or any portion thereof, after the expiration of the term for which the same were leased, or after such tenancy, at will or sufferance, has been terminated by either party.

■ However, the normal forcible entry and detainer law does not apply to owners of mobile homes who are tenants in a mobile home park. Rather, the General Assembly developed specific procedures to address such rentals. *Leader Fed. Bank for Sav. v. Saunders,* 929 P.2d 1343, 1351–52 (Colo. 1997).

Under § 38–12–200.1, et seq., C.R.S.2004, the Mobile Home Park Act, a tenancy shall be terminated only for one or more of the reasons set forth, including (1) failure to comply with ordinances, laws, and regulations; (2) annoyance to other home owners or interference with park management; (3) failure to comply with written rules and regulations of the mobile home park; (4) condemnation or change of use of the mobile home park; (5) false or misleading statements made on the application for tenancy; or (6) certain conduct not at issue here. Section 38–12–203, C.R.S.2004; *see also* § 13–40–110(2), C.R.S.2004 (in "an action for termination of a tenancy in a mobile home park, the complaint ... shall specify the particular reasons for termination as such reasons are stated in section 38–12–203"); *Newport Pac. Capital Co. v. Waste,* 878 P.2d 136, 138 (Colo.App.1994). A tenancy may

also be terminated for failure to pay rent when due. Section 38–12–204, C.R.S.2004.

A tenancy or other estate at will or lease in a mobile home park may not be terminated solely for the purpose of making the home owner's space in the park available for another mobile home or trailer coach. Section 38–12–205, C.R.S.2004.

In addition to any other defenses a home owner may have, it shall be a defense that the landlord's allegations are false or that the reasons for termination are invalid. Section 38–12–203(2), C.R.S.2004. Thus, tenant could present, as a defense, evidence that plaintiffs' allegations were false or that the reasons for termination were invalid. She could also contest within the FED action the alleged reasons for termination and present evidence of the dispute relating to the sale of her mobile home and plaintiffs' intent to inflict emotional harm.

That forcing the parties to enter into an extension of the existing lease may be an inappropriate interference with contract is not a ground under § 38–12–203(1)(c) for termination. The conditions plaintiffs allege, if true, would have existed regardless of whether the cases were severed, and if severed, tenant would have had to present her case twice, because all the claims involve the same parties.

The record reflects that all the parties' claims arose out of related events. The notice to quit was served one month after plaintiffs' alleged interference with tenant's contract. Further, tenant asserted that plaintiffs' eviction efforts were wrongful and entitled her to an award of damages. She testified that the manager suggested that she would have trouble selling her mobile home and offered to list it for her for a fee of $500. Accordingly, evidence of defendant's claims would have to be addressed in plaintiffs' forcible entry and detainer claim.

Thus, the trial court did not err in refusing to grant plaintiffs' motion for bifurcation because of alleged prejudice.

### B. Convenience and Economical Adjudication

Plaintiffs also contend that severance was required because the dates of the occur-

rences were separate, the claims were unrelated, and defendant's claims arose from the sale of her mobile home, not the lease. Thus, in plaintiffs' view, separate trials would not "require the duplication of evidence" because plaintiffs were required to introduce the lease and the notice of violations of mobile home park rules, while the counterclaim required evidence of a contract of sale of a mobile home and a hearsay letter from the brokers. We disagree.

We find no support in the record for plaintiffs' allegations that their ability to enter into a new lease for the mobile home park property would be delayed until the completion of both cases. The record reflects that defendant continued to pay the rent due on the lot. See § 38–12–204(2), C.R.S.2004.

Because convenience, expedition, or economy would not be disserved by a single trial, the trial court did not abuse its discretion in denying severance.

## II. Directed Verdict

■ Plaintiffs contend that the trial court erred in granting defendant's motion for directed verdict pertaining to the expiration of her lease because its ruling creates a tenancy not recognized by case law or statute. According to plaintiffs, at issue are whether § 13–40–104 was amended by the Mobile Home Park Act and whether a lease for a space in a mobile home park can ever expire. We conclude the court did not err.

■ In evaluating motions for directed verdict, we must determine whether there is any evidence of sufficient probative force to support the trial court's findings. A reviewing court considers all evidence in the light most favorable to the party against whom the motion is directed and indulges every reasonable inference that can be legitimately drawn from the evidence in that party's favor. However, when the relevant facts are undisputed, an appellate court may make an independent determination of any legal question. Omedelena v. Denver Options, Inc., 60 P.3d 717, 721–22 (Colo.App.2002).

Construction of a statute is a question of law. Fogg v. Macaluso, 892 P.2d 271 (Colo. 1995). Appellate review of a trial court's interpretation of a statute is de novo. Rowell v. Clifford, 976 P.2d 363 (Colo.App.1998). When construing a statute, we must determine and give effect to the intent of the General Assembly. Gianetto Oil Co. v. Indus. Claim Appeals Office, 931 P.2d 570, 571 (Colo.App.1996). In the absence of a definition by the General Assembly, the words and phrases used are to be construed according to their generally accepted meaning. Allstate Prods. Co. v. Colo. Dep't of Labor & Employment, 782 P.2d 880, 882 (Colo.App. 1989).

The Mobile Home Park Act is silent regarding the effect of the expiration of the term of a lease or the Act's relation to § 13–40–104, which generally governs landlord-tenant relationships. However, the normal forcible entry and detainer law does not apply to owners of mobile homes who are tenants in a mobile home park. Leader Fed. Bank for Sav. v. Saunders, supra, 929 P.2d at 1351–52 (the Mobile Home Park Act delineates, to the exclusion of all other methods, the statutory basis for termination).

The Mobile Home Park Act's declaration states that its purpose is "to establish the relationship between the owner of a mobile home park and the owner of a mobile home situated in such park." Section 38–12–200.2, C.R.S.2004. The Act expressly states that a tenancy can be terminated only for certain specified reasons. Section 38–12–203. "Tenancy" is defined to mean "the rights of a home owner to use a space or lot within a park." Section 38–12–201.5(9), C.R.S.2004. Additionally, rent may be increased upon proper notice. Section 38–12–204(2).

The nature of a mobile home is such that it requires a different kind of effort in its relocation, and it cannot be relocated in any ordinary residential quarters. The uniqueness of the mobile home structure and problems involved in its relocation afford ample differences to support its special treatment by the General Assembly. Hurricane v. Kanover, Ltd., 651 P.2d 1218, 1223 (Colo.1982); see also Vista Vill. Mobile Home Park v. Basnett, 731 P.2d 700, 701 n. 1 (Colo.1987) (noting the high cost of moving a mobile home).

Because the landlord may terminate the tenancy for the reasons set forth in § 38–12–203, including but not limited to violation of park rules, change of use of the mobile park, and nonpayment of rent, contrary to plaintiffs' assertion, the statute does not create a life tenancy in the mobile home park.

In their complaint, plaintiffs relied on § 13–40–104, contending that tenant's lease had expired on its own terms on August 31, 2002 and that they would not renew the lease in September. This circumstance, however, is not one of the reasons for termination permitted in § 38–12–203.

Accordingly, the trial court did not err in granting tenant's motion for a directed verdict.

### III.   Judgment Notwithstanding the Verdict

Plaintiffs contend that the trial court erred in denying their motion for judgment notwithstanding the verdict. We disagree.

A judgment notwithstanding the verdict may be granted only if the evidence, taken in the light most favorable to the party opposing the motion and drawing every reasonable inference that may legitimately be drawn from the evidence in favor of that party, would not support a verdict by a reasonable jury in favor of the party opposing the motion. C.R.C.P. 59(e); *Sylvester v. Liberty Life Ins. Co.*, 42 P.3d 38, 40 (Colo.App.2001); *Brewer v. Am. & Foreign Ins. Co.*, 837 P.2d 236, 238 (Colo.App.1992).

Pursuant to C.R.C.P. 59(a)(2), a judgment notwithstanding the verdict may be granted for either of the following grounds: (1) the evidence is insufficient as a matter of law, or (2) no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law.

### A.   Interference with Contract

■   Plaintiffs contend that (1) tenant's contract purports to sell real estate that belongs to the Park's owners and thus, was void; (2) there was no evidence that plaintiffs caused or restricted the brokers' agents from selling the mobile home; and (3) there were no damages to tenant. We are not persuaded.

■   To be liable for intentional interference with contract, a defendant must 1) be aware of a contract between two parties, 2) intend that one of the parties breach the contract, 3) and induce the party to breach or make it impossible for the party to perform the contract. *Krystkowiak v. W.O. Brisben Companies, Inc.*, 90 P.3d 859 (Colo.2004); *Colorado Nat. Bank v. Friedman*, 846 P.2d 159 (Colo.1993)(it is the conduct of the third person who is not a party to the contract that is punished for inducing a breach or preventing performance of a contract).

On tenant's claim of intentional interference with contract, the jury here was instructed that it must find, inter alia:

(3) Plaintiffs, by word or conduct, or both, intentionally interfered with a representative of [realty company] performance of the contract, thereby causing [realty company] not to perform the contract with the Defendant. And, (4) The Plaintiffs [sic] interference with the contract was improper. And, (5) the Plaintiff's [sic] interference with the contract caused the Defendant damages or loss.

"Interference" was defined to mean "intentional conduct that causes another to terminate, or not to perform a contract, or that make ... performance of the contract impossible or difficult."

As to plaintiffs' contention that the contract between the brokers and tenant is void because it purports to sell real estate that belongs to the owners of the Park, there is contrary evidence in the record. Plaintiffs' answer to tenant's counterclaims admits that "[tenant] has contracted to sell her mobile home." Plaintiffs' motion for JNOV asserts tenant had a contract in which the brokers "agreed to sell a mobile home." Tenant presented the contract for sale of her mobile home and testimony that the contract and its extensions were for the sale of her mobile home rather than the lot on which it was located.

Tenant presented several witnesses to plaintiffs' conduct that may reasonably have led the jury to determine that plaintiffs inter-

fered with her contract with the brokers. For example, a listing agent for the brokers testified that the manager "exchanged words" with him and stuck mace in his face. This agent also testified that the manager told him to "get off the property," chased him, and caused him to retreat from the property. After the police were called, the agent agreed to exit the park and not return.

A letter from another listing agent describes the manager's conversation with another potential purchaser and states that the manager suggested the property was overpriced, that he had a better deal, and that the buyer should look at another home for sale in the Park.

A potential buyer of tenant's home testified that the manager attempted to dissuade him by stating, "[Y]ou don't wanna buy this trailer 'cause if you buy it, you're gonna have to move it." Additionally, the potential buyer testified that he observed a confrontation between the manager and another agent, and as a result of plaintiffs' conduct toward the listing agent when he was showing the trailer to him, he did not purchase the mobile home. Tenant also presented evidence that she was unable to obtain the initial sale price of her mobile home because plaintiffs prevented the completion of the sale.

Because the evidence is conflicting, a reviewing court should not disregard the jury's verdict. Rather, we must reconcile the verdict with the evidence if at all possible. *Lee's Mobile Wash v. Campbell*, 853 P.2d 1140, 1143 (Colo.1993). Because tenant presented evidence that plaintiffs were aware of her listing contract, the jury could have concluded that plaintiffs interfered with this contract by chasing away the listing agent and attempting to dissuade potential purchasers and that tenant was damaged by this conduct. Therefore, the motion for judgment notwithstanding the verdict was properly denied.

### B. Unlawful Detainer

■ Plaintiffs contend that they were entitled to judgment notwithstanding the verdict because tenant allegedly testified that "she made 'extensive improvements' to the lot"; "[s]ome, if not all of the improvements oc-

curred after she received a copy of the trailer park rules"; and "she *never* complied with the park regulation which required she submit proposed modifications to the trailer space to trailer park management for approval." Additionally, plaintiffs assert that the jury did not comply with the jury instructions and allowed sympathy for tenant to trump her admissions. We disagree.

Plaintiffs provide no authorities or record cites for their contentions. It is the duty of counsel to inform the court both as to specific errors relied upon and as to the grounds, supporting facts, and authorities therefor. Bare statements made in the litigants' briefs cannot supply that which must appear from a certified record. *Westrac, Inc. v. Walker Field*, 812 P.2d 714, 718 (Colo.App.1991).

Additionally, the notice of alleged violations was dated in the first half of 2002. Tenant testified that she did not do anything after late 1999 that would have violated the park rules and regulations or that required she obtain permission prior to making changes on the leased lot.

Because the jury could have reasonably concluded that tenant did not violate the park rules and regulations and because plaintiffs provide no support on appeal to dispute the jury's determination, we do not disturb the trial court's judgment.

### IV. Attorney Fees

Tenant requests on appeal that she be awarded her costs for this appeal and attorney fees incurred in the trial court based on § 38–12–209(3), C.R.S.2004. We conclude that further proceedings are required.

Both the Forcible Entry and Detainer Act and the Mobile Home Park Act permit the trial court to award attorney fees and costs. *Newport Pac. Capital Co. v. Waste, supra,* 878 P.2d at 139. Section 38–12–209(3) provides:

The trial judge may award court costs and attorney fees in any court action brought pursuant to any provision of [the Mobile Home Park Act] to the prevailing party upon finding that the prevailing party undertook the court action and legal repre-

sentation for a legally sufficient reason and not for a dilatory or unfounded cause.

The trial court's order stated, "The parties shall file motions concerning costs and attorney fees." Tenant then filed requests for both costs and attorney fees, and plaintiffs filed a reply. However, the record on appeal does not reflect that the trial court ruled on this motion and does not contain a copy of such an order. Thus, the issue of costs and attorney fees incurred in the trial court is not properly before us.

As to attorney fees incurred during this appeal, tenant argues that the appeal itself is a continued effort to terminate her tenancy in the Park, therefore § 38–12–209(3) concerning an award of attorney fees is applicable, and she is entitled to an award therefor. We agree in part.

When a party, pursuant to a statute, has been appropriately awarded attorney fees for a stage of the proceeding prior to the appeal, that party will be entitled to reasonable attorney fees for defending the appeal. The fundamental purpose of awarding attorney fees for the trial stage, where authorized by statute, is to make the injured party whole. This purpose would be frustrated by a requirement that tenant pay attorney fees to defend plaintiffs' appeal. *See Levy–Wegrzyn v. Ediger*, 899 P.2d 230, 233 (Colo.App.1994).

Here, however, because the trial court entered no order regarding attorney fees, it would be premature for us to determine whether an award of attorney fees incurred on appeal is appropriate.

The trial court's judgment and orders are affirmed, and the case is remanded for determination of the award of attorney fees and costs, subject to the parties' right to appeal that determination.

Judge CARPARELLI and Judge LOEB concur.