507 P.3d 83
2021 COA 151
IN RE the MARRIAGE OF Penny Brabb TURILLI, Appellant and Cross-Appellee,
and
Steven Daniel Turilli, Appellee and Cross-Appellant.
Court of Appeals No. 20CA1687
Colorado Court of Appeals, Division A.
Announced December 16, 2021
Johnson Kush, P.C., David M. Johnson, Joi G. Kush, Colorado Springs, Colorado; Weeks Luchetta & Materson, LLP, Alexander M. Masterson, Colorado Springs, Colorado, for Appellant and Cross-Appellee
The Law Office of Dailey & Pratt, LLC, Joel M. Pratt, Lisa M. Dailey, Colorado Springs, Colorado, for Appellee and Cross-Appellant
Opinion by JUDGE VOGT*
¶ 1 In this post-dissolution of marriage proceeding, Penny Brabb Turilli (mother) appeals and Steven Daniel Turilli (father) cross-appeals the district court's order resolving father's section 14-10-129.5, C.R.S. 2021, motion concerning parenting time disputes and its related attorney fees award. We reverse the attorney fees award and remand for the court to hold a hearing on the reasonableness of father's requested fees. We otherwise affirm.
507 P.3d 86 I. Facts
¶ 2 The parties entered into a stipulated separation agreement in 2015 that resolved the allocation of parental responsibilities for their two minor children. As pertinent here, the parties agreed to share decision-making responsibility, give father weekly parenting time from Thursday after school until Saturday afternoon, and exchange travel itineraries seven days in advance. The court incorporated the separation agreement into its 2015 dissolution decree. The agreement was never modified.
¶ 3 Around midnight on March 25, 2020, the parties texted about mother's need to fly to California to care for her ailing mother and whether she should take the children with her. Father supported mother's decision to travel, but he did not want her to take the children. Father said that he would ask his sister to care for the children in mother's absence. Mother responded that she would talk with the children about father's suggestion.
¶ 4 At 5:41 the next morning, while father was asleep, mother texted father a copy of a boarding pass and wrote that she and the children were at the airport and "[l]eaving now." When mother failed to return the children for father's usual weekly parenting time later that day, father filed an emergency motion under section 14-10-129(4), C.R.S. 2021, asking the court to restrict mother's parenting time and order her to return the children to Colorado.
¶ 5 A telephone hearing on father's emergency motion was scheduled for April 3, 2020, but rescheduled to May 1, 2020, at the parties' request. On April 28, 2020, again at the parties' request, the court continued the hearing indefinitely. Father eventually withdrew his section 14-10-129(4) motion after the parties stipulated that mother would return the children to Colorado.
¶ 6 On April 30, 2020, father filed a section 14-10-129.5 motion concerning parenting time disputes. He argued that mother disregarded the court orders for decision-making and parenting time by taking the children to California during a pandemic without notice and against his wishes. In part, father requested makeup parenting time and an award of attorney fees, court costs, and expenses associated with his two motions.
¶ 7 At the end of a two-day hearing, the court found that mother had violated the court orders by unilaterally deciding to take the children to California. The court ordered mother to give father thirty days of makeup parenting time over a nine-month period and ordered mother to pay father's attorney fees as required by section 14-10-129.5(4). (We note that only one child is now subject to the court's order, the older child having reached eighteen years of age in the interim.)
¶ 8 Father submitted an attorney fees affidavit showing that he had incurred $13,654.25 in attorney fees since March 26. Mother objected to what she described as father's overbroad and unreasonable request and asked the court to deny it in its entirety, or, "[i]n the alternative, petitioner requests a hearing on the reasonableness of the fees and costs requested."
¶ 9 The court awarded father the $6,545 he incurred in connection with his section 14-10-129.5 motion. The court declined to award attorney fees, costs, or expenses related to father's section 14-10-129(4) motion.
II. Mother's Appeal
¶ 10 Mother does not deny that she took the children to California over father's objection and in violation of the court's orders. However, she contends on appeal that she had valid reasons for doing so and that the court erred by excluding the testimony and evidence she intended to present as her defense to father's motion. Mother also contends that the court erred by awarding father makeup parenting time. Last, mother argues that the court erred by awarding attorney fees and costs without holding a hearing on the reasonableness of father's requested fees. We agree only with the last argument.
A. Exclusion of Evidence
¶ 11 Mother argues that the district court erred by excluding the evidence of father's alcoholism, his work schedule, and his history of failing to exercise parenting time. She 507 P.3d 87 argues that these were "prime factors" in her decision to take the children to California and that the exclusion of this evidence affected her substantial rights. We perceive no error.
1. Preservation ¶ 12 Father argues that mother failed to preserve this argument for appeal because her opening brief mischaracterizes the evidence and rulings on these three issues. An issue is preserved for appeal when it is brought to the court's attention and the court ruled on it. In re Estate of Owens , 2017 COA 53, ¶ 21, 413 P.3d 255. As father points out, these issues were raised in and ruled on by the court. Mother's argument is preserved.
2. Analysis ¶ 13 All relevant evidence is admissible. CRE 402. Evidence which tends to prove or disprove a fact in issue or which sheds light upon a contested matter is relevant. People v. More , 668 P.2d 968, 970 (Colo. App. 1983) ; see CRE 401. ¶ 14 However, evidence which is too remote either in time or logical relation to a matter in dispute should not be admitted. Fletcher v. People , 179 P.3d 969, 974 (Colo. 2007) ; More , 668 P.2d at 970 (evidence remotely related to contested issues should not be considered by the trier of fact). Likewise, a court should not admit facts so collateral to an issue that they afford only conjectural inference. People v. Rudnick , 878 P.2d 16, 20 (Colo. App. 1993). ¶ 15 We review the court's decision to exclude evidence for an abuse of discretion. In re Estate of Fritzler , 2017 COA 4, ¶ 6, 413 P.3d 163.
a. Father's Alcohol Issues
¶ 16 Mother tried to present evidence that father's past alcohol issues factored into the formation of the parties' 2015 separation agreement. She also sought to present evidence that father did not follow the recommendations in the separation agreement to increase his parenting time after 2015. The court excluded this evidence, finding that the reasons the parenting plan was created were beyond "the scope of what would be relevant for this hearing" and whether father
follow[ed] recommendations concerning alcohol or whatever the concerns were back when that plan was created and [his] follow through or lack of follow through seems to be well outside the scope of this hearing and really not relevant or helpful in moving things along with decisions the [c]ourt has to make for this issue. ¶ 17 The court did not abuse its discretion by excluding this evidence. Evidence that father had alcohol issues six years earlier when the parties entered into their separation agreement was remote and would not shed light on whether mother had violated the court order in 2020. See Fletcher , 179 P.3d at 974 ; More , 668 P.2d at 970. Similarly, evidence that father chose not to follow recommendations to increase his parenting time was collateral to the dispute before the court. See Rudnick , 878 P.2d at 20.
¶ 18 We disagree with mother's argument that she was otherwise prevented from demonstrating that father's continued alcohol use was "an impediment to [him] having extended periods of parenting time with the children." The court gave mother latitude to provide evidence of father's alcohol issues that was "closer in time or relevance to the actual parenting plan and traveling or how decisions are made about children going one place or another." In other words, the court allowed mother to present evidence of father's continuing alcohol issues after 2015. She did not offer such evidence.
b. Father's Work Schedule and History of Parenting Time
¶ 19 Mother argues that the court excluded testimony and evidence concerning father's work schedule, and its effect on his parenting time; his refusal to provide her with a copy of his work schedule; and his history of forgoing parenting time. Such evidence, she contends, would show that father "should have been estopped from the relief sought in his motion because of his historical forfeiture of parenting time." Mother points to a single ruling that she argues prevented 507 P.3d 88 her from exploring these issues. Because the record does not support her assertion, we disagree.
¶ 20 During father's cross-examination, mother's counsel asked father whether he had provided a schedule "of all the other days that [he] missed because of work or because [he] didn't have time to have the children on that schedule." Father's counsel objected that there was no evidence at the hearing that father "didn't have time to take his children." The court sustained the objection "as to[o] argumentative the way it's phrased" and allowed mother's counsel to rephrase the question. Mother's counsel followed up by asking if father had prepared a calendar of "all of the times ... when [he was not] able to exercise [his] parenting time."
¶ 21 The court's ruling prohibited mother from suggesting, in the absence of record evidence, that father chose not to exercise parenting time for reasons unrelated to work. However, the court did not prohibit mother from introducing evidence concerning father's work schedule, his refusal to provide his work schedule, or his history of inconsistent parenting time.
¶ 22 To the contrary, father testified on cross-examination that his work schedule occasionally kept him from exercising overnight parenting time with the children on Thursday or Friday nights. Further, mother testified at length about the effect father's work schedule had on his ability to exercise parenting time, father's repeated refusal to provide her with his work schedule so that she could accommodate parenting time changes, and father's history of exercising parenting time inconsistently. And mother testified that she chose to go to California because, in part, "the week prior that we left, [father] didn't ... show up for his parenting time. And in fact, the day — the night before we left, there was no indication that he was going to take the children then as well." Hence, the court did not foreclose mother's ability to present this evidence as "an essential part of [her] defense."
c. Report of the Child and Family Investigator (CFI)
¶ 23 We reject that part of mother's argument claiming that the court excluded the 2014 CFI report. On mother's motion, the court took judicial notice of the attachments to the separation agreement, one of which was a three-page excerpt from the CFI's report. Neither party sought to admit the entire CFI report at the hearing.
B. Makeup Parenting Time
¶ 24 Mother contends that the court erred by giving father makeup parenting time because it was not an appropriate remedy or in the children's best interests. This argument largely repeats mother's first argument — namely, that the court did not allow evidence of father's alcohol issues, his failure to follow recommendations, or his inconsistent parenting time. We will not reconsider the issue.
¶ 25 The only new argument mother makes is that the court did not consider her significant concerns regarding the COVID-19 pandemic. Because the record shows otherwise, we disagree.
¶ 26 The court found that the pandemic created difficult decisions for everyone, and that it was reasonable for parents to debate "what would be the safest course of action for kids or themselves, what's the most appropriate level of risk for children and themselves to undertake and what would be most appropriate in terms of where people go, what they do, how they live their life." The court recognized that mother believed it was safer for the children to be in California than in Colorado. Still, the court found that even accepting mother's "point of view as being 100% irrefutably true that it's safer in California, it's better for the kids to be there," "at the end of the day," her decision deprived father of his parenting time. This shows the court's consideration of the issue.
¶ 27 Mother does not otherwise explain why the court erred by awarding makeup parenting time, and she concedes that section 14-10-129.5(2)(d) allowed the court to do so. See id. (if a court finds that a parent has not complied with the parenting time order or schedule and has violated the court order, it 507 P.3d 89 may order that makeup parenting time be provided for the aggrieved parent). We see no error in the court's decision to remedy mother's parenting time violation by giving father makeup parenting time.
C. Attorney Fees Award
¶ 28 Mother contends that the district court erred by awarding father attorney fees and costs without holding a hearing on the reasonableness of his requested fees. We agree.
¶ 29 Mother objected to father's attorney fees affidavit by claiming that he sought to include fees beyond those incurred for the two-day hearing, incurred unnecessary time, and manipulated the proceedings by filing the section 14-10-129.5 motion after the parties had reached stipulations concerning the children. Mother asked that the court deny father's request in its entirety or, in the alternative, hold a hearing on the reasonableness of the fees and costs requested. ¶ 30 Where, as here, a party requests a hearing on the reasonableness of attorney fees, due process requires that the district court hold such a hearing. Roberts v. Adams , 47 P.3d 690, 700 (Colo. App. 2001) ; In re Marriage of Mockelmann , 944 P.2d 670, 672 (Colo. App. 1997) ; see also In re Parental Responsibilities Concerning W.F-L. , 2018 COA 164, ¶ 24, 433 P.3d 168 (suggesting that it is appropriate for the district court to hold a hearing on a section 14-10-129.5(4) attorney fees request). The court erred by failing to hold a hearing on mother's request. See Roberts , 47 P.3d at 700 ; Mockelmann , 944 P.2d at 672.
¶ 31 Accordingly, we reverse the attorney fees award and remand for a hearing on the reasonableness of father's requested fees.
¶ 32 In considering this argument, we have necessarily rejected father's argument that it was not preserved for appeal because mother only "suggested" that she wanted a hearing. Mother specifically asked for one.
III. Father's Appeal
¶ 33 Father appeals from the now-reversed attorney fees award. Because his contention will likely arise on remand, we will address it.
A. Additional Facts
¶ 34 As noted above, father initially filed a motion pursuant to section 14-10-129(4) to restrict parenting time. He did not request attorney fees in that motion. After that motion was withdrawn, father filed a second motion under section 14-10-129.5(4), in which he included a request for fees. The court granted fees only for work conducted after the filing of the latter motion. It reasoned that
although disputes may "flow" from conduct that was originally addressed in the [first] motion, the nature of the dispute and the award of fees that is against the non-complying parent should only be applied to work conducted after the filing of the [second motion], once the mandatory attorney fees portion of this statute was in play.
B. Discussion
¶ 35 Father contends that the court erred by failing to award him the fees and costs he incurred for his two motions. He argues that his section 14-10-129(4) motion and his section 14-10-129.5 motion concerning parenting time disputes were substantively a single action entitling him to all fees under section 14-10-129.5(4). We are not persuaded. ¶ 36 We review the district court's decision to award attorney fees and costs for an abuse of discretion, but we review the legal conclusions forming the basis for that decision de novo. In re Marriage of Gallegos , 251 P.3d 1086, 1087 (Colo. App. 2010). Here, the legal conclusion underlying the district court's award of attorney fees was its interpretation of section 14-10-129.5(4).
¶ 37 In relevant part, section 14-10-129.5(4) states that "the court shall order a parent who has failed to provide court-ordered parenting time or to exercise court-ordered parenting time to pay to the aggrieved party, attorney's fees, court costs, and expenses that are associated with an action brought pursuant to this section." ¶ 38 We review issues of statutory interpretation de novo. 507 P.3d 90 Harvey v. Cath. Health Initiatives , 2021 CO 65, ¶ 16, 495 P.3d 935. The overriding goal of statutory construction is to effectuate the legislature's intent. In re Estate of Gallegos , 2021 COA 115, ¶ 13, ––– P.3d ––––. We look first to the plain language of the statute and interpret that language according to its commonly understood and accepted meaning. In re Marriage of Vega , 2021 COA 99, ¶ 14, 497 P.3d 1056. We avoid constructions that would render any of the statutory language superfluous or that would lead to illogical or absurd results. Harvey , ¶ 16. If the statute is clear, we apply it as written. Id.
¶ 39 Section 14-10-129.5(4) is clear. It requires the court to award attorney fees, costs, and expenses for an action brought "pursuant to this section." Id. When used in a statute, "this section" commonly refers to the specific statutory section. See Howard v. Colo. Dep't of Revenue , 680 P.2d 1336, 1338 (Colo. App. 1984) (it is apparent that when the legislature wished to indicate a specific subsection, it used the word "subsection," and when it referred to the general section, it used the word "section"). Hence, "this section" as used in section 14-10-129.5(4) refers to section 14-10-129.5. It follows that, applied as written, section 14-10-129.5(4) requires the court to award attorney fees, costs, and expenses associated with an action brought pursuant to "this section," that is, an action brought under section 14-10-129.5 to enforce parenting time.
¶ 40 Accordingly, the fees that father incurred for his section 14-10-129(4) motion were not "associated with an action brought pursuant to" section 14-10-129.5, and section 14-10-129(4) includes no provision for fees for a motion filed pursuant to that section. ¶ 41 If the legislature had wanted the mandatory fee provision within section 14-10-129.5(4) to extend to any action substantively related to a section 14-10-129.5 motion, it could have said so. Auman v. People , 109 P.3d 647, 656 (Colo. 2005) ("Just as important as what the statute says is what the statute does not say."). The legislature chose to limit the mandatory award of attorney fees, costs, and expenses to those attorney fees, costs, and expenses "associated with an action brought pursuant to this section," that is, section 14-10-129.5. "[W]e must respect the legislature's choice of language, and we do not add words to the statute or subtract words from it." Oakwood Holdings, LLC v. Mortg. Invs. Enters. LLC , 2018 CO 12, ¶ 12, 410 P.3d 1249.
¶ 42 Father nevertheless argues that section 14-10-129.5(4) requires an award of fees for any action "associated with" the section 14-10-129.5 motion. As father argues it, if a party files any motion that is substantially similar to a section 14-10-129.5 motion, the party is entitled to recoup fees for any such motion because the motion is factually "associated with" the section 14-10-129.5 motion. We disagree. The language on which father relies provides specifically for "fees ... associated with an action brought pursuant to this section." § 14-10-129.5(4). It does not provide for "fees incurred in connection with an action that is associated with an action brought pursuant to this section." We decline to rewrite the statute to so state. ¶ 43 For these reasons, we agree with the district court's interpretation of section 14-10-129.5(4) and its conclusion that father was statutorily entitled only to the attorney fees, costs, and expenses he incurred after the filing of his section 14-10-129.5 motion. As stated above, however, the court must reconsider the amount of father's award after a hearing.
IV. Appellate Attorney Fees
¶ 44 Father requests an award of his appellate attorney fees under section 14-10-129.5 for defending against mother's appeal. We grant the request. ¶ 45 "When a party, pursuant to a statute, has been appropriately awarded attorney fees for a stage of the proceeding prior to the appeal, that party will be entitled to reasonable attorney fees for defending the appeal." Duhon v. Nelson , 126 P.3d 262, 269 (Colo. App. 2005). Such an award, when authorized by statute, is to make the plaintiff whole. Levy-Wegrzyn v. Ediger , 899 P.2d 230, 233 (Colo. App. 1994). This purpose would be frustrated if father had to pay attorney fees to defend mother's appeal. See id.
507 P.3d 91 ¶ 46 Because the district court is in a better position to determine the reasonable attorney fees incurred in defending against mother's appeal, we exercise our discretion under C.A.R. 39.1 to remand the case for further proceedings on that issue. See Deutsche Bank Tr. Co. Ams. v. Samora , 2013 COA 81, ¶ 36, 321 P.3d 590.
V. Conclusion
¶ 47 The attorney fees award is reversed, and the case is remanded for the court to hold a hearing on the reasonableness of father's requested fees. The case is also remanded for the court to determine father's reasonable appellate attorney fees under section 14-10-129.5(4). In all other respects, the order is affirmed.
CHIEF JUDGE BERNARD concurs.
JUDGE TAUBMAN* concurs in part and dissents in part
JUDGE TAUBMAN, concurring in part and dissenting in part.
¶ 48 I agree with the majority's decision rejecting the parenting time arguments of Penny Brabb Turilli (mother) and remanding the attorney fees request of Steven Daniel Turilli (father) for an evidentiary hearing. However, I dissent in part because I agree with father's cross-appeal that he is entitled to recover his attorney fees for his time spent seeking the return of the parties' children from California pursuant to an emergency motion.
¶ 49 My partial dissent is based on the unique language in section 14-10-129.5(4), C.R.S. 2021, which provides in pertinent part that
[i]n addition to any other order entered pursuant to subsection (2) of this section, the court shall order a parent who has failed to provide court-ordered parenting time ... to pay to the aggrieved party, attorney's fees ... that are associated with an action brought pursuant to this section.
¶ 50 Subsection (2) sets forth a number of remedies the court may impose, including makeup parenting time (subsection (d)), finding contempt and imposing a fine or jail sentence (subsection (e)), and ordering both parents to attend a parental education program (subsection (b.3)). I explain below why I agree with father's contention.
I. Background
¶ 51 As the majority notes, father initially filed an emergency motion on March 25, 2020, asking the court to restrict mother's parenting time and return the parties' two children to Colorado. Father requested attorney fees in his reply brief in support of his emergency motion. Father eventually withdrew this motion after negotiating an agreement with mother to return the children to Colorado. About a month later, on April 30, 2020, when the children were still in California, father filed a motion under section 14-10-129.5 seeking makeup parenting time for the period the children were in California and an award of attorney fees, court costs, and expenses associated with both his emergency motion and his motion for makeup parenting time and attorney fees. The children were returned to Colorado on May 20, 2020, pursuant to the parties' stipulation.
¶ 52 As the majority explains, the trial court awarded father thirty days makeup parenting time and ordered mother to pay attorney fees only for the time spent on father's motion for makeup parenting time. The court rejected father's request for attorney fees for time spent seeking the children's return to Colorado under the emergency motion. Although father requested $13,654.25 in attorney fees and costs, the court awarded only the $6,545 related to the motion to enforce parenting time. Father cross-appeals that part of the court's order denying his request for attorney fees for the time spent on his emergency motion.
II. Preservation, Standard of Review, and Applicable Law
¶ 53 The parties agree that father preserved his request for attorney fees for time 507 P.3d 92 spent on his emergency motion. They also agree that we review de novo his entitlement to attorney fees under section 14-10-129.5(4), because it presents an issue of law. Harvey v. Cath. Health Initiatives , 2021 CO 65, ¶ 16, 495 P.3d 935, 938.
¶ 54 In interpreting this statute, we apply the four rules of statutory construction cited by the majority:
1. The overriding goal of statutory interpretation is to effectuate the intent of the General Assembly. In re Estate of Gallegos , 2021 COA 115, ¶ 13, ––– P.3d ––––, ––––.
2. We look first to the plain language of the statute and interpret that language according to its commonly understood and accepted meaning. In re Marriage of Vega , 2021 COA 99, ¶ 14, 497 P.3d 1056.
3. We avoid statutory constructions that would render any of the language at issue superfluous or that would lead to an illogical or absurd result. Harvey , ¶ 16, 495 P.3d at 939.
4. If the statute is clear, we apply it as written. Id.
¶ 55 I part ways with my colleagues in the application of these principles to section 14-10-129.5(4). That statute contains unique language regarding the award of attorney fees, providing the aggrieved party such fees "that are associated with an action brought pursuant to this section." Id. The parties have not cited, and I have not found, any state or federal statute providing for an award of attorney fees "associated with" an action brought pursuant to a specified statute.
¶ 56 Let me begin by demonstrating the contrasting language the General Assembly has used in other prevailing party attorney fees statutes. In section 6-1-113(2)(b), C.R.S. 2021, the damages section of the Colorado Consumer Protection Act, for example, the General Assembly provided that "[i]n the case of any successful action to enforce said liability, [the prevailing party is entitled to] the costs of the action together with reasonable attorney fees as determined by the court." Under the Colorado Wage Claim Act, section 8-4-110(1), C.R.S. 2021, "in any action" to recover unpaid wages, either the employer or the employee may recover "reasonable costs and attorney fees incurred in such action." Neither statute refers to an award of attorney fees for actions "associated with" an action brought under those statutes.
¶ 57 Similarly, in section 10-3-1116(5), C.R.S. 2021, concerning unreasonable delay or denial of benefits by an insurance company, the statute provides that "[i]f the court finds that an action brought pursuant to this section was frivolous ... the court shall award costs and attorney fees to the defendant in the action." Thus, in that statute, an award of attorney fees applies only to "an action brought pursuant to this section," not to actions associated with an action brought pursuant to that section. See id.
¶ 58 Likewise, section 13-17-201, C.R.S. 2021, which provides for an award of attorney fees to a defendant who succeeds in bringing a motion to dismiss a tort action under C.R.C.P. 12(b), applies to all such tort actions, not actions related to or associated with such cases.
¶ 59 Other Colorado statutes similarly limit an award of attorney fees to a party bringing or defending an action under that statute. See, e.g. , § 13-40-115(2), C.R.S. 2021 (the prevailing party in an eviction case is entitled to recover attorney fees); § 18-17-106(7), C.R.S. 2021 (any person injured by a violation of section 18-17-104, C.R.S. 2021, "shall also recover attorney fees in the trial and appellate courts"); § 24-34-402.5(2)(b)(I), C.R.S. 2021 (a prevailing plaintiff "in the civil action" is entitled to reasonable attorney fees); § 38-12-220, C.R.S. 2021 (a mobile home owner who succeeds in a private civil action against a landlord is entitled to an award of reasonable attorney fees "in any such action"). See also 42 U.S.C. § 1988(b) ("In any action or proceeding to enforce [specified federal statutes, including 42 U.S.C. § 1983 ], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee...."); 29 U.S.C. § 216(b) ("The court in such action [under the Fair Labor Standards Act] shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a 507 P.3d 93 reasonable attorney's fee to be paid by the defendant....").
¶ 60 In contrast, section 14-10-119, C.R.S. 2021, the attorney fees statute most widely employed in dissolution of marriage cases, is not a prevailing party statute. Instead, it provides a mechanism to offset financial disparities of the parties. See In re Marriage of de Koning , 2016 CO 2, ¶ 23, 364 P.3d 494, 497 ("The purpose of any fee award under section 119 is to ensure neither party suffers an ‘undue economic hardship’ as a result of the dissolution.") (citation omitted).
¶ 61 Thus, the General Assembly used the phrase "associated with" in section 14-10-129.5(4), a term not otherwise used in the Uniform Dissolution of Marriage Act, sections 14-10-101 to - 133, C.R.S. 2021, or apparently in any other attorney fees statute. Under the rules of statutory construction noted above, we must accord meaning to every term used by the General Assembly.
¶ 62 Here, the General Assembly could have written section 14-10-129.5(4) to authorize an award of attorney fees for "an action brought pursuant to this section," thereby using language parallel to that used in other attorney fees statutes.
¶ 63 To determine the meaning of "associated with" in section 14-10-129.5(4), we may look to dictionary definitions. See Roalstad v. City of Lafayette , 2015 COA 146, ¶ 34, 363 P.3d 790, 796 (when statute does not define term at issue, the word is one of common usage, and people of ordinary intelligence need not guess at its meaning, court may look to dictionary definitions to determine the statute's plain and ordinary meaning).
¶ 64 In Webster's Third New International Dictionary 132 (2002), the word "associate" has numerous meanings, three of which are relevant here. First, "associate" means "to join (things) together or connect (one thing) with another." Id. Second, the term means "to join or connect in any of various intangible or unspecified ways (as in general mental, legendary, or historical relationship, in unspecified causal relationship, or in unspecified causal or scholarly relationship)." Id. Third, "associate" may mean "closely connected, joined, or united with another (as in interest, function, activity, or office)." Id.
¶ 65 In my view, applying any of these definitions to section 14-10-129.5(4) leads to the conclusion that attorney fees sought under that statute may extend to attorney fees for time spent on a motion that is connected to or has an unspecified causal relationship with a motion filed under section 14-10-129.5(4). Even under the third definition, father's time spent on his emergency motion was "closely connected" with time spent on the parenting time motion. See Webster's Third New International Dictionary at 132.
¶ 66 This connection is evident from the plain language of section 14-10-129, C.R.S. 2021. Section 14-10-129(1)(a)(I) states that, subject to certain exceptions not applicable here, "the court may make or modify an order granting or denying parenting time rights whenever such order or modification would serve the best interests of the child." Thus, this statute, like section 14-10-129.5, the immediately following statute, both concern parenting time. When father filed his emergency motion to have the children immediately returned to Colorado from California, he sought to obtain an order granting parenting time. About three weeks before the children were returned to Colorado as a result of a negotiated settlement, father filed his parenting time motion to obtain makeup parenting time (among other relief requested). Accordingly, the parenting time motion was clearly connected to or resulted from an unspecified causal relationship with the emergency motion.
¶ 67 Significantly, father's attorney fees affidavit excluded time from his emergency motion not connected to his request for return of the children and makeup parenting time. Thus, his request for attorney fees under section 14-10-129.5(4) clearly falls within the parameters of that statute.
¶ 68 The General Assembly expressly provided for an award of attorney fees under section 14-10-129(5) for actions under section 14-10-129(4) that are substantially frivolous, groundless, or vexatious. Subsections (2.5)(b) and (3)(a) also provide for an award of attorney fees under similar circumstances However, these sections do not preclude an award of attorney fees under section 14-10-129.5(4) 507 P.3d 94 for activities "associated with" actions for makeup parenting time, particularly given the expansive "associated with" language in that section.
¶ 69 Further, section 14-10-129.5 requires a court to provide an award of attorney fees to a parent who has failed to provide court-ordered parenting time in addition to multiple possible sanctions against that parent as set forth in subsection (2). Significantly, the first sentence of subsection (4) provides for an award of attorney fees "that are associated with an action brought pursuant to this section." In contrast, the second sentence of subsection (4) states that if a parent "responding to an action brought pursuant to this section" is found not to be in violation of a parenting time order, the court may order the petitioning party to pay attorney fees, court costs, and expenses incurred by the responding party. The use of different language in these sentences further illustrates the different meaning of the "associated with" language.
¶ 70 Accordingly, I would remand father's request for attorney fees under the emergency motion as part of the hearing on remand and order the court to determine the reasonableness of that part of father's attorney fees request.
--------
Notes:
* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5 (3), and § 24-51-1105, C.R.S. 2021.
--------