24CA0103 Parental Resp Conc JAM 02-13-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0103
Larimer County District Court No. 16DR30443
Honorable Laurie K. Dean, Judge

In re the Parental Responsibilities Concerning J.A.M., a Child,

and Concerning Ryan Michael Morris,

Appellee,

and

Debra Allison Kamstock,

Appellant.

ORDER AFFIRMED

Division IV
Opinion by JUDGE HARRIS
Yun and Kuhn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 13, 2025

Liggett, Johnson, & Goodman, P.C., Sarah E. Liggett, Fort Collins, Colorado, for Appellee

Debra Allison Kamstock, Pro Se

¶ 1      In this domestic relations proceeding involving Debra Allison Kamstock (mother) and Ryan Michael Morris (father), mother appeals the district court's order granting father's motion to modify parenting time.  We affirm.

I.      Relevant Facts

¶ 2      The parties share a daughter, J.A.M., born in 2014.  In the 2018 permanent orders, the district court named mother as the child's primary residential parent, granted father three overnights of parenting time every week, and allocated joint decision-making responsibilities.

¶ 3      In 2020, after a hearing on mother's request to modify parenting time, the district court entered an order that, while making minor adjustments to the schedule, maintained father's overall number of overnights with the child.

¶ 4      In early 2023, father filed a motion to modify, seeking, at a minimum, equal parenting time and sole decision-making responsibility (modification motion).  The district court set the matter for a two-day hearing in November 2023.

¶ 5      Meanwhile, mother filed two motions, one asking for the appointment of a child and family investigator (CFI) and the other

1

seeking to exclude the testimony of father's expert witness on parental alienation. A magistrate denied the first motion, a decision later adopted by the district court. Regarding the second motion, the court deferred ruling until the modification hearing.

¶ 6    About a month before the hearing, mother filed a renewed request for the appointment of a CFI. The court denied the motion.

¶ 7    Following the hearing, the district court entered a written order determining that equal parenting time, implemented on a week-on, week-off basis, was in the child's best interests. The court also granted father sole decision-making responsibility over the child's education.

¶ 8    Mother now appeals.

## II.    Jurisdiction

¶ 9    Father asserts that we lack jurisdiction to consider mother's contentions because they were not specifically mentioned in her notice of appeal. *See* C.A.R. 3(a) ("Upon the filing of the notice of appeal, the appellate court will have exclusive jurisdiction over the appeal and all procedures concerning the appeal unless otherwise specified by these rules."). However, as he acknowledges, C.A.R. 3(d)(3) only requires an "advisory listing of . . . issues to be raised

2

on appeal." C.A.R. 3(d)(3) does not preclude a party from raising additional issues in the opening brief, particularly when those issues, as in this case, were presented to and ruled on by the district court. *See In re Marriage of Williams*, 2017 COA 120M, ¶ 24; *see also In re Marriage of Turilli*, 2021 COA 151, ¶ 12 (to preserve an issue for appeal, the issue must be brought to the district court's attention so that the court is allowed to rule on it). Thus, we have jurisdiction to consider mother's contentions.

### III. CFI

¶ 10 Mother contends that the magistrate, and then the district court, erred by not appointing a CFI. We disagree.

¶ 11 In a case involving parental responsibilities, the district court "may" appoint a neutral person to serve as a CFI, who investigates, reports, and makes recommendations on issues affecting the child's best interests. *See* § 14-10-116.5, C.R.S. 2024; *see also In re Parental Responsibilities of B.J.*, 242 P.3d 1128, 1133 (Colo. 2010) (ultimately, it is the role of the district court, not a CFI, to allocate parental responsibilities according to the child's best interests). The word "may" is permissive, generally signifying a grant of discretion

or the freedom to choose among available options. *In re Marriage of Vega*, 2021 COA 99, ¶ 18.

¶ 12 We conclude that the magistrate and the district court did not abuse their discretion by denying mother's request for the appointment of a CFI. *See* § 14-10-116.5. They found, and the record supports, that (1) the child was eight years old at the time of mother's motion; (2) the child had already undergone two evaluations, one during the initial allocation of parental responsibilities proceedings in 2018, and another during the proceedings to resolve mother's modification motion in 2020; (3) an additional evaluation would be unnecessary, would cause further delay, and would incur unnecessary costs without providing any new relevant information; and (4) subjecting the child to another evaluation and the adversarial process would not be in her best interests.

## IV. Father's Expert Witness

¶ 13 Next, mother contends that the district court erred by admitting expert evidence on parental alienation in violation of section 14-10-127.5(3)(a)(I), C.R.S. 2024.

¶ 14    As an initial matter, we note that the record does not include the expert's testimony or the evidentiary objections and corresponding rulings made at the hearing. *See In re Marriage of Dean*, 2017 COA 51, ¶ 13 ("Where the appellant fails to provide . . . a transcript, the [appellate] court must presume that the record supports the judgment."); *see also McCall v. Meyers*, 94 P.3d 1271, 1272 (Colo. App. 2004) ("A party cannot overcome a deficiency in the record by statements in the briefs."); *Yadon v. Southward*, 64 P.3d 909, 912 (Colo. App. 2002) (unrepresented litigants are bound by the same rules of procedure as attorneys).

¶ 15    Regardless, even if the court erred, we conclude the error was harmless because it did not affect mother's substantial rights. *See* C.R.C.P. 61 ("[N]o error or defect in any ruling or order or in anything done or omitted by the court . . . is ground . . . for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice."); *see also In re Marriage of Tatum*, 653 P.2d 74, 76 (Colo. App. 1982) (the district court's erroneous ruling was harmless because it did not affect the husband's substantial rights). The court made clear that it did not rely on the expert's

testimony in reaching its decision. Specifically, the court found the expert to be neither persuasive nor credible due to his "disproportionately combative" demeanor and lack of firsthand knowledge of the family dynamics in the case.

## V. Parenting Time Modification

¶ 16   Finally, mother contends that the district court erred by granting father equal parenting time. We disagree.

¶ 17   The district court has broad discretion in deciding whether to modify parenting time, and we must exercise every presumption in favor of upholding the court's decision. *In re Marriage of Badawiyeh*, 2023 COA 4, ¶ 9. The court abuses its discretion when its decision is manifestly arbitrary, unfair, or unreasonable, or is based on a misapplication of the law. *Id.*

¶ 18   We review de novo whether the district court applied the appropriate legal standard. *Id.* at ¶ 10.

¶ 19   Under section 14-10-129(1)(a)(I), C.R.S. 2024, a district court may modify an existing parenting time order whenever the modification would serve the child's best interests. *In re Marriage of Parr*, 240 P.3d 509, 511 (Colo. App. 2010).

¶ 20    In determining the child's best interests, the district court considers the relevant factors under section 14-10-124(1.5)(a), C.R.S. 2024. *See People in Interest of A.M.K.*, 68 P.3d 563, 565-66 (Colo. App. 2003). These factors include (1) the parties' wishes as to parenting time; (2) the child's wishes if the child is sufficiently mature to express reasoned and independent preferences as to the parenting time schedule; (3) the interaction and interrelationship of the child with the parties, siblings, and any other person who may significantly affect the child's best interests; (4) any report related to domestic violence that is submitted to the court; (5) the child's adjustment to the child's home, school, and community; (6) the mental and physical health of all individuals involved; (7) the ability of the parties to encourage the sharing of love, affection, and contact between the child and the other party; (8) whether the past pattern of involvement of the parties with the child reflects a system of values, time commitment, and mutual support; (9) the physical proximity of the parties to each other as this relates to the practical considerations of parenting time; and (10) the ability of each party to place the needs of the child ahead of their own needs. § 14-10-124(1.5)(a).

¶ 21 While the district court need not make specific findings on each best interests factor, there must be some indication in the record that the court considered the pertinent factors. *A.M.K.*, 68 P.3d at 566. The court must make sufficiently explicit factual findings to give us a clear understanding of the basis of its decision. *In re Marriage of Gibbs*, 2019 COA 104, ¶ 9. "Factual findings are sufficient if they identify the evidence which the fact finder deemed persuasive and determinative of the issues raised." *In re Marriage of Garst*, 955 P.2d 1056, 1058 (Colo. App. 1998).

¶ 22 In granting equal parenting time, the district court made the following findings:

- Mother wished to maintain the current order, or, alternatively, requested a reduction in father's parenting time.

- Father requested 100% parenting time or, alternatively, equal parenting time.

- The child was loved and supported by both parties. However, the child had a stronger relationship with mother. This was because mother had a larger share of

the parenting time.  As a result of this dynamic, father had a less developed bond with the child.

- There have been no findings of domestic violence.

- The child was thriving in elementary school.  In fact, the child was identified as gifted and talented.  While mother testified that the child loved competitive dance, father expressed skepticism.

- Mother continued to struggle with acknowledging her contribution to the parties' conflict.  Her parenting style "may subversively suggest" to the child that father was not a capable parent.  Father, for his part, "continue[d] to exhibit avoidance patterns when addressing [m]other's concerns."

- Neither party could encourage the sharing of love, affection, and contact between the child and the other party.  They were unable to effectively make joint decisions.

- Both parties were highly involved in the child's life.

- Neither party could place the child's needs ahead of their own.

- The "biggest threat" to the child's safety and well-being was the ongoing conflict between the parties. Attempts by judicial officers to foster effective co-parenting had been unsuccessful.

- The current parenting time order did not mitigate the parties' high conflict.

- The child exhibited signs of distress, such as dysregulation, during parenting time exchanges and transitions between the parties' homes. An equal parenting time arrangement, where the child would spend one week with each parent on a rotating basis, would minimize the number of exchanges and transitions. Moreover, it would give each parent the opportunity to parent independently, free from undue influence or interference from the other.

¶ 23    Because the district court considered the relevant statutory best interests factors and made the necessary findings, which are supported by sufficient evidence in the record, we will not disturb its determination that the child's best interests would be better

served by each parent enjoying equal parenting time. *See Badawiyeh*, ¶ 9.

¶ 24 Still, mother argues that the district court ignored evidence that (1) it was "[f]ather's own actions, behaviors, and interactions," not any alleged parental alienation by her, that formed the "root cause" of his "problematic" relationship with the child; (2) the child was fearful of father; and (3) father blamed mother for multiple issues extending beyond his relationship with the child. We disagree, because we may presume that the court considered all the evidence when reaching its decision, even if it did not make specific findings in its written order. *See In re Marriage of Udis*, 780 P.2d 499, 504 (Colo. 1989).

¶ 25 To the extent mother contends that the court erred by ordering equal parenting time to improve father's "problematic" relationship with the child, we reject the contention. The court did not find that father's relationship with the child was "problematic," and it did not restrict contact between mother and the child to improve father's supposedly "deficient" relationship with the child. The court determined that equal parenting time was in the best interests of the child. *See* § 14-10-124(1.5)(a).

¶ 26    Nor are we persuaded by mother's claim that the absence of a CFI deprived the court of necessary evidence about the child's wishes under section 14-10-124(1.5)(a)(I).  The child's preference is only one of many best interests factors to be weighed when determining whether to modify parenting time.  *See* § 14-10-124(1.5)(a).  As stated earlier, the court properly considered and weighed the relevant factors, and substantial evidence in the record supports its findings.  *See In re Marriage of Hatton*, 160 P.3d 326, 330, 335 (Colo. App. 2007) (it is the district court's responsibility to assess witness credibility and resolve conflicting evidence regarding the child's best interests); *see also In re Marriage of Monteil*, 960 P.2d 717, 719 (Colo. App. 1998) (an appellate court will not substitute its judgment on the best interests of the child for that of the district court).

## VI.   Other Issues

¶ 27    We decline to address certain issues mother lists at the beginning of her brief but fails to develop in her argument section. Those issues include that the district court erred by (1) relieving father of a requirement to participate in therapy with the child; (2) "indirectly allocating decision-making authority for the child's

12

activities to itself"; and (3) granting father decision-making responsibility over the child's education. *See In re Marriage of Zander*, 2019 COA 149, ¶ 27 (appellate court may decline to consider an argument not supported by legal authority or any meaningful legal analysis), *aff'd*, 2021 CO 12; *Vallagio at Inverness Residential Condo. Ass'n v. Metro. Homes, Inc.*, 2017 CO 69, ¶ 40 (An appellate court will "decline to assume the mantle" when parties offer no supporting arguments for their claims.).

## VII.  Attorney Fees

¶ 28     Mother asks us to direct the district court to order father to pay her attorney fees incurred while defending his modification motion under section 14-10-119, C.R.S. 2024, and section 13-17-102, C.R.S. 2024.  She says that his improper objection to the CFI, failure to meet the "initial duty to confer," and false accusations of parental alienation caused her to retain an attorney to protect the child's safety and well-being.  We deny the request because this type of relief is unavailable on appeal.

¶ 29     Our appellate jurisdiction is limited to the review of final judgments or orders.  *See In re Marriage of Evans*, 2021 COA 141, ¶ 11; *see also* C.A.R. 1(a)(1); § 13-4-102(1), C.R.S. 2024; *In re Org.*

*of N. Chaffee Cty. Fire Prot. Dist.*, 544 P.2d 637, 638 (Colo. 1975) ("The purpose of an appellate court is to [r]eview judgments, not to make them . . . ."). Thus, this is not the proper forum for the type of relief mother seeks; mother must seek relief from the district court.

¶ 30 Father requests his appellate attorney fees and costs under C.A.R. 39.1 and section 13-17-102, arguing that mother's appeal is frivolous and vexatious. Although she has not prevailed, we decline to assess attorney fees. *See In re Estate of Shimizu*, 2016 COA 163, ¶ 34 ("[A]n award of fees on appeal is appropriate only in clear and unequivocal cases where no rational argument is presented . . . ."). Father is entitled to costs on appeal, *see* C.A.R. 39(a), and may seek those costs in the district court pursuant to C.A.R. 39(c).

## VIII. Disposition

¶ 31 The order is affirmed.

JUDGE YUN and JUDGE KUHN concur.